**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

---

| | |
|---|---|
| HALSTEAD BEAD, INC., an Arizona corporation, | Civil Action No. _____ |
| *Plaintiff*, | |
| *v.* | **VERIFIED COMPLAINT** |
| KIMBERLY LEWIS, in her official capacity as Louisiana Secretary of Revenue, and | |
| AMANDA GRANIER, in her official capacity as Sales Tax Collector, Lafourche Parish, Louisiana, and | |
| DONNA DRUDE, in her official capacity as Sales and Use Tax Administrator of Tangipahoa Parish, Louisiana, and | |
| JAMIE BUTTS, in her official capacity as Sales Tax Auditor, Washington Parish, Louisiana, and | |
| LAFOURCHE PARISH, LOUISIANA, a Home Rule Chartered Parish, and | |
| TANGIPAHOA PARISH, LOUISIANA, a Home Rule Chartered Parish, and | |
| WASHINGTON PARISH, LOUISIANA, a Home Rule Chartered Parish, | |
| *Defendants*. | |

---

## NATURE OF ACTION

1.     Married couple Hilary Halstead Scott and Robert ("Brad") Scott run Halstead Bead, Inc.

("Halstead Bead"), a family-owned business specializing in jewelry-making supplies—beads,

charms, rings, chains, and the like—selling to both wholesalers and retail customers. Incorporated

in 1975, the Arizona business started as a mail-order catalog and made the switch to eCommerce in the 1990s.

2.      But the couple has a problem selling in Louisiana: the state's constitution requires each of the state's *sixty-four* parishes to collect sales and use taxes, with each parish setting its own tax rates and categories—and state law requires out-of-state businesses that sell to Louisiana customers to register and file reports in *each* where sales are made. This creates a compliance nightmare. Because of that severe burden, Halstead Bead must regularly monitor sales data for Louisiana and plans to limit its sales into Louisiana to avoid triggering the tax-collection requirement. Halstead Bead brings this lawsuit to challenge Louisiana's requirement that out-of-state sellers register and file reports with every Louisiana parish as an undue burden on interstate commerce and a violation of due process.

## JURISDICTION

3.      This Court has federal question jurisdiction, 28 U.S.C. § 1331, because this action arises under the Commerce Clause of the United States Constitution (U.S. Const. art. I, § 8, cl. 3) and the Due Process Clause of the Fourteenth Amendment (U.S. Const. amend. XIV § 1) and under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988. This Court has jurisdiction to grant relief under the Declaratory Judgment Act. *See* 28 U.S.C. §§ 2201 and 2202.

## VENUE

4.      Venue is proper under 28 U.S.C. §§ 1391(b)(1) ("a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located") and (b)(2) (the "district in which a substantial part of the events or omissions giving rise to the claim occurred").

## PARTIES

5.      Plaintiff Halstead Bead, Inc. ("Halstead Bead") is an Arizona corporation headquartered at 6650 Inter Cal Way, Prescott, Arizona, 86301. It was incorporated October 6, 1975. Hilary Halstead Scott serves as Halstead Bead's president. Robert ("Brad") Scott is the treasurer for Halstead Bead and handles tax compliance.

6.      Defendant Kimberly Lewis is the Louisiana Secretary of Revenue. In that position, she is responsible for enforcing the collection of sales taxes. She is sued in her official capacity.

7.      Defendant Amanda Granier is Sales Tax Collector of Lafourche Parish, Louisiana. In that position, she is responsible for enforcing the state's requirement that out-of-state businesses such as Halstead Bead register to pay local sales and use taxes. She is sued in the official capacity.

8.      Defendant Donna Drude is Sales and Use Tax Administrator of Tangipahoa Parish, Louisiana. In that position, she is responsible for enforcing the state's requirement that out-of-state businesses such as Halstead Bead register to pay local sales and use taxes. She is sued in the official capacity

9.      Defendant Jamie Butts, is Sales Tax Auditor of Washington Parish, Louisiana. In that position, she is responsible for enforcing the state's requirement that out-of-state businesses such as Halstead Bead register to pay local sales and use taxes. She is sued in the official capacity

10.     Defendant Lafourche Parish is a home-rule chartered entity in Louisiana, which has an independent registration and reporting system for the collection of sales and use taxes for commerce within its borders.

11.     Defendant Tangipahoa Parish is a home-rule chartered entity in Louisiana, which has an independent registration and reporting system for the collection of sales and use taxes for commerce within its borders.

12.     Defendant Washington Parish is a home-rule chartered entity in Louisiana, which has an independent registration and reporting system for the collection of sales and use taxes for commerce within its borders.

## FACTS

### Halstead Bead Founding and Structure

13.     Halstead Bead is a family-owned business. Thomas and Suzanne Halstead began the business in 1973 and incorporated it in 1975. The Halsteads' daughter, Hilary Halstead Scott, and son-in-law, Brad Scott, are now at the helm of the business as its president and treasurer, respectively.

14.     The shareholders of Halstead Bead are Thomas and Suzanne Halstead, Kristin Ott, and Hilary Halstead Scott.

15.     Thomas Halstead is vice president and on the board of directors. Suzanne Halstead is secretary of the board. But Thomas and Suzanne Halstead are retired from running the day-to-day operations of the business.

16.     Kristin Ott is a shareholder but does not manage the business.

17.     Hilary Halstead Scott and Brad Scott make operations decisions for Halstead Bead and oversee the leadership team.

18.     Hilary Halstead Scott is the president of Halstead Bead and is authorized to make decisions under all circumstances for the business.

19.     As treasurer, Brad Scott is in charge of finances and tax registration and compliance, among many other duties at the company, including payroll, benefits, and other financial matters.

20.     Halstead Bead is a jewelry and craft supply wholesaler and retailer. The company sells beads, chains, rings, and other jewelry and crafting supplies to small business owners and artists.

21.     Halstead Bead has twenty-eight employees, all working out of Arizona.

**Halstead Bead's Advertising, Sales, and Shipping**

22.     Originally a mail-order catalogue business, Halstead Bead now primarily sells its wares online. Sales are completed either online via the company's website or via a toll-free number listed on the company's website.

23.     Halstead Bead sends catalogues to all 50 states—to current clients, schools, and events across the country. The physical catalogues are printed annually.

24.     Online, the company advertises via national pay-per-click campaigns through Google, Facebook, Instagram, YouTube, and Pinterest.

25.     Halstead Bead also uses online marketers and social media "influencers" located around the country. These marketers and influencers are paid via invoices for marketing services and are not employees or contractors of Halstead Bead. No marketers or influencers for Halstead Bead reside in Louisiana.

26.     The company also advertises via a national online buyers guide for the industry.

27.     Halstead Bead does not specifically target any particular states in its online advertising.

28.     Halstead Bead does not perform direct sales to customers at any physical location—not by walk-in, nor by appointment. Halstead Bead's headquarters are not open to the public.

29.     Halstead Bead does not sell via agents, such as traveling salespeople.

30.     Halstead Bead does not sell at tables or booths at fairs, farmers markets, or other similar events.

31.     Halstead Bead does not sell via a "click-through" model using referrals from third parties.

32.     Halstead Bead does not use online marketplace facilitators such as Amazon Marketplace, eBay, or Etsy.

33.     The company warehouses its own inventory in Arizona and ships all its goods directly to its customers, using common carriers for deliveries (e.g. FedEx, UPS, and the USPS). Halstead Bead does not drop ship.

## Halstead Bead's Tax Collection Compliance

34.     Halstead Bead's customers include both wholesale and retail buyers.

35.     Most of Halstead Bead's sales nationwide are wholesale.

36.     Wholesale buyers are eligible for a lower price for Halstead Bead's goods, and wholesale purchases generally are not subject to sales or use taxes.

37.     To be eligible to buy from Halstead Bead wholesale, a buyer must provide Halstead Bead with a business license, a sales tax license, or an exemption certificate. The address on the paperwork must correspond with the business address. Halstead collects this data no matter where the wholesaler is located and maintains the information in case of audit.

38.     Retail buyers pay at the higher retail price point and, where applicable, pay sales and use taxes.

39.     Retail buyers do not have to provide any documentation other than the billing and shipping addresses.

40.     Since January 1, 2021, Halstead Bead reports, files, and remits taxes to twenty states as a remote seller. These states are California, Florida, Georgia, Hawaii, Indiana, Kansas, Massachusetts, Maryland, Michigan, Minnesota, North Carolina, New Jersey, Ohio, Oklahoma, Pennsylvania, Utah, Virginia, Vermont, Washington, and Wisconsin.

41.     In fourteen of those states, Halstead Bead uses TaxValet software for filing its sales and use taxes.

42.     To aid its collection of sales and use taxes, Halstead Bead uses Zip-Tax.com, a third-party tax-rate calculation website. Based on the customer's 9-digit zip code and the delivery address, the website provides Halstead with a tax amount for a given transaction. This amount is added to the invoice total and collected.

43.     The money collected is held until the following month and then remitted to the various states via TaxValet or by Halstead Bead directly.

44.     But selling beyond a *de minimis* number of orders in Louisiana has proven too complex and difficult for Halstead Bead because of the costs of registering and reporting taxes in each parish.

45.     On information and belief, Halstead Bead estimates that the costs of Louisiana registration and reporting would be $11,000 over three years.

46.     Therefore, Halstead Bead makes sure to engage in fewer than 200 transactions or less than $100,000 in taxable sales in Louisiana in any single year. *See* La. Rev. Stat. § 47:301(m)(i)(bb) (exempting from collection and reporting any person without physical presence in Louisiana if they have fewer than 200 transactions or less than $100,000 in sales in the state in a given year).

47.     But for the Louisiana tax registration and reporting compliance burdens, Halstead Bead would not limit its annual sales to Louisiana customers to fewer than 200 transactions or less than $100,000 and would remit all sales and use tax applicable to those sales.

48.     Based on the compliance burden in Louisiana if it approaches the *de minimis* threshold, Halstead Bead will stop sales in the state and risks losing revenue as a result.

## Louisiana's Complex Tax Collection System

49.     Louisiana Constitution, Article VII, Section 3(B)(1), provides that each Louisiana parish shall levy and collect its own sales and use taxes. Each parish has a single collector of taxes for its subdivisions, but there is not a statewide collection system. *Id.*

50.     Pursuant to this constitutional provision, the state legislature enacted statutory rules for collection of sales and use taxes. La. Rev. Stat. § 47:337.14.

51.     Local parishes may have their own exclusions and exemptions for sales and use taxes, adopted by local ordinance. La. Rev. Stat. § 47:337.4(B)(6). And while parishes *collect* sales and use taxes, tax rates may be *set* by local taxing authorities within a parish, such as cities, towns, villages, and school or fire districts—which means that local tax rates may vary within a given parish.

52.     Some local sales and use tax exemptions are statutorily listed in other Louisiana statutes—with some applicable to only one parish. *See e.g.*, La. Rev. Stat. §§ 47:337.10 (listing sixteen categories of exemptions, sometimes limited to a single parish), 47:337.11 *et seq.*

53.     Because the Louisiana Constitution requires parish-level collection of sales and use taxes, the Louisiana Legislature cannot pass a statute to create a central repository for the collection of sales and use taxes. *See Caddo-Shreveport Sales & Use Tax Comm'n v. Off. of Motor Vehicles Through Dep't of Pub. Safety & Corr. of State*, 710 So. 2d 776, 779 (La. 1998).

54.     Recently, the state legislature referred to the voters a constitutional amendment as a first step in fixing this burden on interstate commerce. That measure, known as Amendment 1, failed. La. Sec. of State, Unofficial Results, Constitutional Amendment 1, *available at* https://voterportal.sos.la.gov/graphical. The parish-by-parish system remains.

55.     Louisiana's parish-by-parish approach—with numerous entities imposing their own sales and uses taxes within each parish—means that a business selling to Louisiana customers could have to file annually more than 750 different state and parish sales tax returns throughout the state—with numerous disparate calculations made on each return. Copies of those forms are attached as Exhibit A.

56.     The parish-by-parish approach generates many pages of sales tax rules, creating hundreds of hours of compliance costs annually. Copies of some of those rules—those that are easily found online—are attached as Exhibit B.

57.     Compliance is so time-consuming largely because it is not obvious which jurisdictions have a claim to a sale at a given address. Although a customer's mailing address and nine-digit postal zip code can identify a town and the parish, that does not necessarily inform Halstead Bead of other local taxing bodies that have jurisdiction over the address.

58.     For example, in Lafourche Parish, there are several towns but also several consolidated road districts, each with its own sales and use tax rates. *See* Exhibit C (Lafourche Parish Return Form). Determining which local body's tax rate applies even within a parish is burdensome.

59.     In Tangipahoa Parish, there are *nine* different jurisdictions, including districts nonobvious to out-of-state sellers, such as "Fire District #1." *See* Exhibit D (Tangipahoa Parish Return Form).

60.     In Washington Parish, out-of-state sellers must know which addresses are "Within the 4th WARD but outside Bogalusa Limits." Exhibit E (Washington Parish Return Form, Column E).

61.     Halstead Bead, not knowing the intricate details of road taxing districts, fire district boundaries, or what is inside or outside of the Fourth Ward of Washington Parish, is in a trap: if it applies the wrong rate, penalties apply.

62.     If a business is a corporation (as Halstead Bead is), a limited liability company, or a limited partnership, its officers, directors, managers, or members may be held *personally* liable for any misapplied sales taxes or failure to properly register. La. Rev. Stat. § 47:1561.1(A).

63.     In contrast with Louisiana, neighboring Texas allows small businesses to register once and collect at a single average local tax rate across the state, while giving businesses with the resources to do so the option to file at local levels. Tex. Tax Code Ann. § 151.0595 (remote seller single registration and payment provision); Tex. Comptroller of Public Accounts, Sales Tax Rate Locator (website) https://mycpa.cpa.state.tx.us/atj/ (allowing for single and multiple address searches and downloadable data sets). Louisiana has developed a similar single average local tax rate but denies its use to remote sellers when they meet the dollar or transaction threshold. La. Rev. Stat. §§ 47:302(K)(5).

64.     Neighboring Mississippi also has centralized sales tax collection by the state's department of revenue. *E.g.* 35 Code Miss. R. Pt. IV, R. 3.09 (Mississippi Department of Revenue regulation to collect taxes of "sales by mail" under Miss. Code. Ann. § 27-67-4(2)(e)).

65.     Of states within the Fifth Circuit, only Louisiana forces out-of-state sellers such as Halstead Bead to register and file regular reports with local governments. Louisiana thus imposes a much heavier compliance burden on out-of-state sellers than its neighbors do.

**The Challenge is About Regulatory Compliance, Not Remitting Sales and Use Taxes**

66.     Successful protection of Halstead Bead's rights will not deprive Louisiana of revenue, only of the need to register and file in dozens of local jurisdictions. And, as South Dakota and Texas show, for example, states can come up with ways to make local sales tax registration and collection easier for out-of-state sellers.

67.     Louisiana does not impose sales tax on wholesale transactions at any level of government. La. Rev. Stat. § 47:306(A)(7). Yet the state still requires wholesale sellers with more than 200 annual transactions with Louisiana customers to register to pay local taxes and file reports—even if the tax they collect from Louisiana customers is *zero* dollars.

68.     Thus far, the vast majority of Halstead Bead's sales into Louisiana have been wholesale. As of November 2, Halstead Bead has had 114 wholesale orders and just 21 retail orders from Louisiana.

69.     The comparative values of these transactions are similarly lopsided: $36,196.49 in wholesale transactions versus just $2,828.56 retail.

70.     Because Louisiana does not tax wholesale transactions, Louisiana Revised Statute § 47:306(A)(7), the vast majority of Halstead Bead's Louisiana transactions and sales revenue are not even subject to sales or use tax.

71.     Only the approximately $2,800 in retail sales would be the basis for any revenue for the state or parishes. Halstead Bead does not object to remitting the taxes due on retail sales, but the compliance costs—i.e, the costs of registering with and reporting to each Louisiana parish, just to pay a small tax amount on individual sales—far exceed either the value of the retail sales to Halstead Bead or the revenue that Louisiana parishes would receive from those taxes.

72.     For retail sales, if Halstead Bead could register and remit local taxes in a system similar to Texas's—under which the registrations, methods and calculations for each locality's taxes are provided in a central database—the regulatory burdens would be significantly less.

### CLAIMS FOR RELIEF

**Count One:**
**Dormant Commerce Clause under U.S. Constitution Article I, Section 8, clause 3**

73.     Plaintiff realleges and incorporates by reference paragraphs 1 through 72.

74.     The Commerce Clause of the United States Constitution grants Congress the power to "regulate Commerce . . . among the several states." U.S. Const. art. I, § 8, cl. 3. The Supreme Court has long held that the Commerce Clause sometimes "imposes limitations on the [s]tates absent congressional action" when they impede "the free flow of interstate commerce." *South Dakota v. Wayfair, Inc.*, 585 U.S. ___, ___, 138 S. Ct. 2080, 2089-90 (2018) (internal citation and quotation marks omitted). But taxes on interstate commerce may survive a "challenge when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977).

75.     The *Wayfair* decision upheld South Dakota's taxing of eCommerce, but there were important guardrails on keeping the state's sales tax compliance from being burdensome: "First, the Act applies a safe harbor to those who transact only limited business in South Dakota. Second, the Act ensures that no obligation to remit the sales tax may be applied retroactively…. Third, South Dakota is one of more than 20 States that have adopted the Streamlined Sales and Use Tax Agreement. This system standardizes taxes to reduce administrative and compliance costs: It requires a single, state level tax administration, uniform definitions of products and services, simplified tax rate structures, and other uniform rules. It also provides sellers access to sales tax administration software paid for by the State. Sellers who choose to use such software are immune from audit liability." *Id*. at 2099-2100.

76.     Louisiana has few of the *Wayfair* hallmarks, except for a safe harbor for *de minimis* orders. *See* La. Rev Stat § 47:301(m)(i)(bb) (exempting from collection and reporting any person without physical presence in Louisiana if they have fewer than 200 transactions with, or less than $100,000 in sales to, customers in the state).

77.     Unlike South Dakota, Louisiana is not part of the Streamlined Sales and Use Tax agreement among the states. Instead, its tax remitting system is splintered among its local parishes.

78.     Louisiana's requirement of parish-by-parish registration and reporting of sales and use taxes unduly burdens interstate commerce, particularly Halstead Bead's wholesale transactions, which are not subject to sales or uses taxes and thus generate no tax revenue.

79.     Under Louisiana law, each taxing jurisdiction may create its own definitions for tax purposes, which means there are no uniform rules throughout the state.

80.     There is not one single point of contact for out-of-state sellers required to collect Louisiana taxes, but instead sixty-four contacts that an out-of-state business would have to contact to seek clarification of particular rates and definitions in each parish.

81.     There is no software, much less state-supplied software, for registering and reporting in each jurisdiction—again, registration and reporting are parish-by-parish, creating a fragmented system that invites arbitrary enforcement.

82.     And because there is no state-approved software, there is no safe harbor for miscalculations or misapplication of hyper-local rates and definitions, including for fire districts and the like.

83.     Furthermore, the Constitution's Commerce Clause does not permit states "to discriminate against interstate commerce either on its face expressly or in practical effect," without the state clearly demonstrating "that the statute serves a legitimate local purpose, and that this purpose could not be served as well by available nondiscriminatory means." *Maine v. Taylor*, 477 U.S. 131, 138 (1986).

84.     Even nondiscriminatory burdens on commerce may violate the Commerce Clause if the burden clearly outweighs the benefits to the state. *Pike v. Bruce Church*, 397 U.S. 137, 141 (1970).

85.     Under *Pike*, a court must consider whether a statute "regulates even-handedly to effectuate a legitimate local public interest" and then whether "the effects on interstate commerce are only incidental." *Id*. at 142. If "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits," then the court will consider whether the local interest could be accomplished by more reasonable means. *Id*. If it could, the burden on interstate commerce violates the Commerce Clause.

86.     Under *Pike*, even "nondiscriminatory burdens on commerce" may "be struck down on a showing that those burdens clearly outweigh the benefits of a state or local practice." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 353 (2008).

87.     Here, the burdens that Louisiana's parish-by-parish taxation scheme impose on Halstead Bead and similar out-of-state sellers far outweigh any arguable benefit to the state.

88.     As set forth above, the costs of complying with Louisiana's scheme are great. *Supra* ¶¶ 49–65.

89.     At the same time, the benefits to the state of Halstead Bead's compliance are negligible, as most of Halstead Bead's sales are wholesale and not even subject to sales or use tax.

90.     In fact, the costs Halstead Bead would incur to comply with Louisiana's parish-by-parish reporting, filing, and collection requirements would be far greater than the combined tax revenue Louisiana local governments would receive from Halstead Bead's sales.

91.     Declaratory and injunctive relief are necessary to remedy Louisiana's burden on interstate commerce as a result of its splintered tax registration, reporting, and remitting system.

92.     The undue burden Louisiana's tax scheme imposes on out-of-state sellers is injuring Halstead Bead, which is entitled to declaratory and injunctive relief against Defendants' continued

enforcement of these unconstitutional laws, practices, procedures, and policies, as well as an award of attorneys' fees and costs. *See* 28 U.S.C. §§ 2201, 2201; 42 U.S.C. §§ 1983, 1988.

**Count Two:**
**Due Process Clause of U.S. Const. amend. XIV, § 1**

93.     Plaintiff realleges and incorporates by reference paragraphs 1 through 92.

94.     A challenge to a state tax scheme's impact on out-of-state businesses can sound under both the Dormant Commerce Clause and the Due Process Clause. While the inquiries often look similar, they are distinct and must be analyzed separately. *See Comptroller of Treasury of Maryland v. Wynne*, 575 U.S. 542, 557 (2015) (collecting and comparing cases).

95.     The Fourteenth Amendment provides: "No State shall… deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause of the Fourteenth Amendment constrains a state's power to impose tax-related requirements on out-of-state entities. *See*, *e.g.*, *North Carolina Dep't of Revenue v. The Kimberley Rice Kaestner 1992 Fam. Tr.*, 588 U.S. ___,___, 139 S. Ct. 2213, 2219 (2019).

96.     Under *Kaestner*, the court considers whether there are (1) minimum contacts between the state and the person being taxed and (2) whether the tax is "rationally related" to "values connected with the taxing State." *Id.* at 2220. This challenge implicates prong two of the *Kaestner* test.

97.     Under the Due Process Clause, courts look to the "practical operation" of the tax on out-of-state businesses. *Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 444 (1940).

98.     Thus, for a state to reach beyond its borders, there must be a reasonable relationship between the tax system and value gained in process. *See*, *e.g.*, *Norfolk & W. Ry. Co. v. Missouri State Tax Comm'n*, 390 U.S. 317 (1968) (state's formula for taxing railroad rolling stock not in line with the benefits to the state).

99.    Under the Due Process Clause, therefore, a court will carefully consider the reasonableness of a particular tax system based on its specific features.

100.    Louisiana's system, requiring remote sellers to have detailed local knowledge of parish and various tax districts within the parish, is not reasonable, and its practical effect is that Louisiana's tax registration system is a trap for the unwary.

101.    Even in the internet age, a business must spend enormous amounts of time not only registering and remitting in each parish, but knowing which school district, road district, or fire district rate might apply—too much to ask of someone provided only with a shipping address and a nine-digit zip code. This is compounded by the complex regulations, product definitions, and rates applied by each parish.

102.    The costs imposed by the state's demand for such local knowledge far outweigh the revenue the state receives, or the benefits Halstead Bead receives for the opportunity to reach Louisiana retail buyers. Worse, neither the state nor the parishes provide the information necessary to determine what rate or definitions apply based solely on shipping address. Instead, each seller must register with each parish, and then cross-check with multiple points of contact to find out whether a school or fire district rate applies.

103.    Where a business's transactions are overwhelmingly wholesale, as Halstead Bead's are, and therefore not subject to sales or use taxes, there is an even greater mismatch between the benefit to the state's interests and the burdens placed on the seller.

104.    Because managers face personal liability for being incorrect in remitting sales or use taxes, the burdens are even more severe.

105.    The result is that Halstead Bead, and, on information and belief, those similarly situated, would limit their sales into the state, cutting them off entirely before reaching the sales threshold

16

that would require tax registration, reporting, and collection. Their wholesale customers must turn to other business suppliers.

106.    Local governments gain little, if any, revenue from this system, but impose heavy compliance costs on out-of-state sellers and penalize the sellers if they err in determining the applicable rate or definitions for a transaction.

107.    Declaratory and injunctive relief are necessary to remedy this unduly burdensome treatment of out-of-state sellers for little local gain. Louisiana's system is an unreasonable and arbitrary use of its taxing power against out-o- state sellers.

108.    The undue burden Louisiana's tax scheme imposes on out-of-state sellers is injuring Halstead Bead, which is entitled to declaratory and injunctive relief against Defendants' continued enforcement of these unconstitutional laws, practices, procedures, and policies, as well as an award of attorneys' fees and costs. *See* 28 U.S.C. §§ 2201, 2201; 42 U.S.C. §§ 1983, 1988.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and:

A.    Declare that Louisiana's parish-by-parish sales and use tax registration and remitting requirements, Louisiana Constitution, Article VII, Section 3 and Louisiana Revised Statute § 47:337.14, unconstitutionally burden interstate commerce in violation of the Commerce Clause of the United States Constitution.

B.    Declare that Louisiana's parish-by-parish sales and use tax registration and remitting requirements, Louisiana Constitution, Article VII, Section 3 and Louisiana Revised Statute § 47:337.14, unconstitutionally burden interstate commerce in violation of the Commerce Clause of the United States Constitution, as applied to the activity of Halstead Bead, Inc.

C.      Declare that Louisiana's parish-by-parish sales and use tax registration and remitting requirements, Louisiana Constitution, Article VII, Section 3 and Louisiana Revised Statute § 47:337.14, violate the Due Process Clause of the Fourteenth Amendment on their face.

D.      Declare that Louisiana's parish-by-parish sales and use tax registration and remitting requirements, Louisiana Constitution, Article VII, Section 3 and Louisiana Revised Statute § 47:337.14, violate the Due Process Clause of the Fourteenth Amendment, as applied to the activity of Halstead Bead, Inc.

E.      Permanently enjoin Defendants from enforcing local sales and use tax registration and reporting requirements, against out-of-state sellers.

F.      Permanently enjoin Defendants from enforcing local sales and use tax registration and reporting requirements against Halstead Bead's eCommerce business.

G.      Award Halstead Bead nominal damages in the amount of $1 for the violation of its constitutional right to engage in interstate commerce and its right to due process of law.

H.      Award Halstead Bead its costs and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988, or any other applicable statute or authority.

I.      Any other relief this Court may grant in its discretion.

Respectfully submitted,

s/ Sarah Harbison

Joseph Henchman*
Tyler Martinez*
NATIONAL TAXPAYERS UNION FOUNDATION
122 C Street NW, Suite 650
Washington, DC 20001
Telephone: (703) 683-5700
jbh@ntu.org
tmartinez@ntu.org

Jacob Huebert*
GOLDWATER INSTITUTE

Sarah Harbison (LSBA 31948)
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone: (504) 952-8016
sarah@pelicaninstitute.org

500 E. Coronado Road
Phoenix, AZ 85004
Telephone: (602) 462-5000
litigation@goldwaterinstitute.org

*Counsel for Plaintiff*

Dated: November 15, 2021                    * Admission *pro hac vice* pending.

## VERIFICATION

STATE OF ARIZONA )
                  ) ss.
COUNTY OF YAVAPAI )

I, Bradley Scott, declare as follows:

1.      I am the treasurer of the Plaintiff in this case, Halstead Bead, Inc., and have personal knowledge of the company's operations and finances, including the details set forth in the foregoing Verified Complaint, which I have reviewed, and I could competently testify as to those matters.

2.      I declare under penalty of perjury that the allegations in the foregoing Verified Complaint are true and correct to the best of my knowledge, except as to matters stated to be on information and belief, and as to such matters I certify that I verily believe the same to be true.

_____

Subscribed and sworn before me this _11/12_ day of November, 2021.

_____
Notary Public
My Commission Expires: _5-27-2023_