**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| HALSTEAD BEAD, INC., an Arizona corporation, | |
| *Plaintiff,* | |
| v. | CIVIL ACTION NO. 2:21-cv-02106 |
| KIMBERLY LEWIS, in her official capacity as Louisiana Secretary of Revenue, and | JUDGE: JANE TRICHE MILAZZO |
| | MAGISTRATE: KAREN WELLS ROBY |
| AMANDA GRANIER, in her official capacity as Sales and Use Tax Administrator of Lafourche Parish, Louisiana, and | |
| DONNA DRUDE, in her official capacity as Sales and Use Tax Administrator of Tangipahoa Parish, Louisiana, and | |
| JAMIE BUTTS, in her official capacity as Sales Tax Auditor, Washington Parish, Louisiana, and | |
| LAFOURCHE PARISH, LOUISIANA, a Home Rule Chartered Parish, and | |
| TANGIPAHOA PARISH, LOUISIANA, a Home Rule Chartered Parish, and | |
| WASHINGTON PARISH, LOUISIANA, a Home Rule Chartered Parish, | |
| *Defendants.* | |

**JOINT MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12**

NOW COMES, AMANDA GRANIER, in her official capacity as Sales Tax Collector,

Lafourche Parish, Louisiana; DONNA DRUDE, in her official capacity as Sales and Use Tax

Administration of Tangipahoa Parish, Louisiana, and JAMIE BUTTS, in her official capacity as

Sales Tax Auditor, Washington Parish, Louisiana, (collectively, "Defendants" or the

"Collectors"), who collectively submit the following Memorandum in Support of their Motion to Dismiss Pursuant to Rule 12, to wit:

## INTRODUCTION

Halstead Bead, Inc. ("Plaintiff"), an Arizona based company, files suit seeking to restrain the assessment and collection of Louisiana state and local sales and use tax related to remote sales delivered into Louisiana.[1]  Specifically, Plaintiff asks for a declaratory judgment that Louisiana's current sales and use tax system be found unconstitutional under the Commerce Clause and the Due Process Clause of the United States Constitution.  Additionally, it requests this Court to enjoin Louisiana and its parishes from enforcing local-level sales and use tax registration and reporting requirements against out-of-state sellers.

As set forth more fully below, Plaintiff seeks declaratory and injunctive relief on the grounds that the core sales and use tax powers granted to the Collectors under the Louisiana Constitution and related statutes, which comprise the essential structure and content of Louisiana's sales state and local sales tax system, unconstitutionally burden interstate commerce in violation of the Commerce Clause and the Due Process Clause of the United States Constitution.  If granted, the foregoing relief requested by Plaintiff would constitute one of the most pervasive and disruptive intrusions by a federal court into a state tax system.

---

[1] While Plaintiff represents itself as a family-owned, Arizona business with a genuine interest in conducting additional business in Louisiana, it is worth noting to this Court that through its Treasurer, Mr. Robert ("Brad") Scott, Plaintiff has been featured in a pattern of articles advocating against the current regulation and taxation of small businesses at a multi-state/national level.  *See, e.g.,* Tripp Baltz, *A Retailer's Struggle to Survive a Post-Wayfair Sales Tax World*, BLOOMBERG (Oct. 24, 2019, 1:43 P.M.); Bradley Scott, *Coronavirus Relief May Doom America's Small Businesses*, Law360 (March 24, 2020, 8:15 P.M.).  Mr. Brad Scott (in his corporate role) has even testified before U.S. Congress regarding *Wayfair*'s impact on Plaintiff's sales tax practices, which consisted of some of the same state sales tax issues present before this Court.  *See South Dakota v. Wayfair, Inc.: Online Sales Taxes and Their Impact on Main Street: Hearing Before the H. Comm. on Small Business*, 116th Cong. 10-12 (2020) (statement of Brad Scott).

Additionally, Plaintiff's alleged injury from these provisions of law is that it "risks" losing potential revenue from Louisiana by refusing, on its own volition, to surpass the economic thresholds set forth under La. R.S. 47:301(4)(m)(i).[2]  However, the majority of the hypothetical burdens contemplated by Plaintiff in the Petition currently do not, and will not, apply to Plaintiff as a remote dealer for Louisiana sales tax purposes. Thus, without an actual injury suffered by Plaintiff – either present or anticipatory – the Petition is reduced to nothing more than a general grievance of Louisiana's state and local sales and use tax system.

Furthermore, Plaintiff's Complaint is predicated on false and misleading allegations concerning Louisiana's state and local sales and use tax system and the allegedly undue burden imposed on remote dealers. Specifically, one of Plaintiff's main contentions is that Louisiana's state and local sales and use tax system imposes the undue burden of potentially requiring Plaintiff to file more than 750 different state and parish sales tax returns annually, and that such burden is cost prohibitive.[3]

For whatever reason, either due to Plaintiff's ignorance of the existence of the Louisiana Sales and Use Tax Commission for Remote Sellers (hereinafter the "Remote Sellers Commission") created by the Louisiana Legislature in 2017,[4] or as a result of the intentional omission of facts regarding the Remote Sellers Commission, the pleadings are false and misleading with regard to the hypothetical burdens/costs contemplated by Plaintiff. The Remote Sellers Commission is the sole collector for all remote sales for remote dealers who meet the "economic nexus" definition

---

[2] *See* Plaintiff's Verified Complaint at ¶48 ("Based on the compliance burden in Louisiana if it approaches the *de minimis* threshold [La. R.S. 47:301(4)(m)(i)], Halstead Bead will stop sales in the state and risks losing revenue as a result").
[3] *See* Plaintiff's Verified Complaint at ¶55.
[4] *See* La. Rev. Stat. §47:339, *et seq.*; Act No. 274 of the 2017 Regular Session of the Louisiana Legislature ("Act 274").

provided in La. R.S. 47:301(4)(m)(i).[5]  As a result, the actual filing "burden" for a remote dealer which makes sales into Louisiana is twelve annual returns – one return each month –  not 750.[6]

However, there is no need to even address the merits of Plaintiff's constitutional claims – or more appropriately, the lack thereof – as this Court lacks subject matter jurisdiction to entertain this action and to provide the relief Plaintiff seeks.  First, Plaintiff seeks a remedy that this Court does not have Article III jurisdiction to provide under the doctrines of standing, ripeness and mootness.  In its Complaint, Plaintiff states that it: (1) is an out-of-state corporation located in Arizona[7], (2) has no physical nexus with Louisiana[8], (3) makes sales into Louisiana, which are shipped via common carrier[9], and (4) engages in fewer than 200 transactions or less than $100,000 in taxable sales in Louisiana in a single year.[10]  Therefore, Plaintiff currently does not meet the definition of a "dealer" under Louisiana sales tax law, and as such, is not required to collect and remit state and local sales and use tax for its sales made into Louisiana.[11]  As will be addressed below, the entirety of Plaintiff's claims are hypothetical, not actual. Thus, there is no justiciable case and controversy herein.

Additionally, the Tax Injunction Act acts as a broad restriction on federal suits that seek to impede tax administration such as the instant litigation. Similarly, but independently, the action is barred by the principle of federal comity.

---

[5] *See* La. Rev. Stat. §47:339(A)(2); *See also* La. Rev. Stat. §47:340(G).
[6] *See* Affidavit of Amanda Granier (the "Granier Aff.") attached hereto as Exhibit "A" at ¶9; Affidavit of Donna Drude (the "Drude Aff.") attached hereto as Exhibit "B" at ¶9; and Affidavit of Jamie Butts (the "Butts Aff.") attached hereto as Exhibit "C" at ¶9.
[7] *See* Plaintiff's Verified Complaint at ¶5.
[8] *See* Plaintiff's Verified Complaint at ¶¶21 – 33.
[9] *See* Plaintiff's Verified Complaint at ¶33.
[10] *See* Plaintiff's Verified Complaint at ¶46.
[11] *See* ¶¶7 – 9 of the Granier Aff., the Drude Aff., and the Butts Aff.

Furthermore, Plaintiff's complaint should also be dismissed for failure to state a claim under F.R.C.P. Rule 12(b)(6).  Finally, and regardless of whether this Honorable Court has subject matter jurisdiction herein, this Court should abstain from exercising federal jurisdiction under the *Burford* abstention doctrine.

WHEREFORE, for these reasons and those more fully explained, *infra*, Defendants, AMANDA GRANIER, in her official capacity as Sales Tax Collector, Lafourche Parish, Louisiana; DONNA DRUDE, in her official capacity as Sales and Use Tax Administration of Tangipahoa Parish, Louisiana, and JAMIE BUTTS, in her official capacity as Sales Tax Auditor, Washington Parish, Louisiana, jointly and respectfully request that this Court dismiss Plaintiff's complaint in its entirety.

## BACKGROUND

## I.    THE WAYFAIR DECISION AND LOUISIANA'S RESPONSE.

### A.    **The Impact of the *Wayfair* Decision.**

The question in *Quill Corp. v. North Dakota* 504 U.S. 298 (1992), and revisited and decided in *South Dakota v. Wayfair* 138 S.Ct. 2080 (2018), was whether a State could require an out-of-state seller/dealer to collect the state's sales taxes, and if so under what circumstances.  In *Quill*, the U.S. Supreme Court in 1992 determined that the Commerce Clause of the United States Constitution would prohibit a state from imposing the obligation to collect state sales taxes where the seller/dealer had no physical presence (employees, solicitors, offices, business locations, etc.) in the state ("physical nexus").  *Quill*, 504 U.S. at 317.  As a result, dealers with physical nexus continued to be required to collect and remit state and local sales and use tax for the sales made in the state.  In turn, the state and local collectors were permitted by law to proceed against either the taxpayer or the dealer for collection.

What happened over the decades that followed *Quill* with the advent of eCommerce was an explosion of internet sales delivered into a state from an out-of-state dealer who lacked physical nexus, and as a result, did not charge the destination state's sales tax rates. The *Wayfair* Court, recognizing the disparity created by the 30-year old *Quill* decision that was decided when "remote" sales were via mail order catalogs and not smartphones and touch screens, determined that *Quill* is "flawed on its own terms." *Wayfair*, 138 S.Ct. at 2085. The Court declared that first, the physical presence rule is not a necessary interpretation of the requirement that a state tax must be "applied to an activity with a substantial nexus with the taxing State." *Id.*; *Complete Auto Transit, Inc. v. Brady*, 430 U. S. 274, 279 (1977).[12] Second, *Quill* "creates rather than resolves market distortions." *Wayfair*, 138 S.Ct. at 2085. And finally, *Quill* "imposes the sort of arbitrary, formalistic distinction that the Court's modern Commerce Clause precedents disavow." *Id.*

The Court in *Wayfair* ultimately upheld the South Dakota Act at issue before it, which required out-of-state sellers to collect and remit sales tax "as if the seller had a physical presence in the state." *Id.* at 2089. The Act created what the Supreme Court described as a "safe harbor," applying only to sellers that, on an annual basis, deliver more than $100,000 of goods or services into South Dakota or engage in 200 or more separate transactions for the delivery of goods or

---

[12] The Court in *Complete Auto* explained the now-accepted framework for state taxation. 430 U.S. at 274 (1977). The Court held that a State "may tax exclusively interstate commerce so long as the tax does not create any effect forbidden by the Commerce Clause." *Id.* at 285. After all, "interstate commerce may be required to pay its fair share of state taxes." *D. H. Holmes Co.* v. *McNamara*, 486 U.S. 24, 31 (1988). The Court will sustain a tax so long as it (1) applies to an activity with a substantial nexus with the taxing State, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services the State provides. *See Complete Auto*, *supra*, at 279. In the absence of *Quill* and *Bellas Hess*, the first prong of the *Complete Auto* test simply asks whether the tax applies to an activity with a substantial nexus with the taxing State. 430 U.S. at 279. "[S]uch a nexus is established when the taxpayer [or collector] 'avails itself of the substantial privilege of carrying on business' in that jurisdiction." *Polar Tankers, Inc.* v. *City of Valdez*, 557 U.S. 1, 11 (2009).

services into the State. *Id.* The Act also foreclosed the retroactive application of this requirement and provided means for the Act to be appropriately stayed until the constitutionality of the law has been clearly established. *Id.*

### B. Louisiana's Legislative Response to the *Wayfair* Decision.

Prior to *Wayfair*, and perhaps in anticipation of a change in federal Commerce Clause law considering the rapid and enormous growth of eCommerce, the Louisiana Legislature established the Remote Sellers Commission.[13] It was the Legislature's intent for the Remote Sellers Commission to serve as the single entity in Louisiana for the collection and administration of state and local sales and use tax on remote sales sourced to Louisiana taxing jurisdictions.[14] At the time of the passage of Act 274, it was unclear if Congress would provide a legislative fix, e.g., through the passage of what was referred to at the time as the proposed *Marketplace Fairness Act*, or through a U.S. Supreme Court decision since *Wayfair* was making its way through the lower courts.

Once *Wayfair* had been decided, the Louisiana Legislature quickly acted, adding the following to Louisiana's definition of a "dealer" for sales tax purposes, thus expanding the definition to include the class of out-of-state dealers contemplated by *Wayfair*. Act 5 of the 2018 2nd Extra. Session of the Louisiana Legislature ("Act 5") added La. R.S. 47:301(4)(m), which provides:

> (m)(i) Any person who sells for delivery into Louisiana tangible personal sales tax, products transferred electronically, or services, and who does not have a physical presence in Louisiana, if during the previous or current calendar year either of the following criteria was met:

---

[13] *See* Act 274.
[14] *See* La. Rev. Stat. §47:339(A)(2). *See also* La. Rev. Stat. §47:340(G).

(aa) The person's *gross revenue* for sales delivered into Louisiana **has exceeded one hundred thousand dollars** from sales of tangible personal sales tax, products transferred electronically, or services.

(bb) The person sold for delivery into Louisiana tangible personal sales tax, products transferred electronically, or services in **two hundred or more separate transactions.**

(ii) A person without a physical presence in Louisiana may voluntarily register for and collect state and local sales and use taxes as a dealer, even if they do not meet the criteria established in Item (i) of this Subparagraph.[15]

Conversely, a dealer without physical nexus and who sell less than $100,000 in sales of tangible personal sales tax and under 200 separate transactions in Louisiana during the previous or current calendar year is not a "dealer" under Louisiana law.[16]  A seller, who does not qualify as a "dealer" under Louisiana sales tax law is not required to collect and remit state and local sales and use tax for sales made into Louisiana.[17]

Act 5 further added La. R.S. 47:302(W)(6), which provides:

(6) Until the Louisiana Sales and Use Tax Commission for Remote Sellers enforces collection and remittance of state and local sales and use tax based on the applicable state and local rates and bases, dealers as defined in R.S. 47:301(4)(m) shall specifically collect the additional tax authorized by Subsection K of this Section and shall file all applicable sales and use tax returns. Notice of enforcement by the Louisiana Sales and Use Tax Commission for Remote Sellers shall be published in a policy statement as authorized by LAC 61:III.101 no later than thirty days prior to the effective date of the enforcement.

C. **The Louisiana Sales and Use Tax Commission for Remote Sellers.**

In accordance with La. R.S. 47:302(W)(6), the Remote Sellers Commission issued Remote Sellers Information Bulletin No. 20-002 dated May 7, 2020, which provided a notice of the

---

[15] La. Rev. Stat. §47:301(4)(m) (emphasis added).
[16] *See* La. Rev. Stat. §47:301(4); *See also* ¶9 of the Granier Aff., the Drude Aff., and the Butts Aff.
[17] *See* La. Rev. Stat. §47:301(4).

effective date, July 1, 2020, and enforcement by the Remote Sellers Commission for the collection of state and local sales and use tax on remote sales.[18]   The website for the Remote Sellers Commission went "live" and the Commission commenced receiving filings and returns and collecting taxes from remote sellers on July 1, 2020.[19]   Since that time, the Remote Sellers Commission has been the singular collector of sales and use tax on remote sales made into Louisiana by remote dealers for the State and its parishes.[20]

Prior to its commencement on July 1, 2020, the Remote Sellers Commission executed an agreement entitled "MEMORANDUM OF UNDERSTANDING BETWEEN THE LOUISIANA SALES AND USE TAX COMMISSION FOR REMOTE SELLERS AND LOCAL SALES AND USE TAX COLLECTOR" (the "MOU") with each of the parish sales and use tax collectors in Louisiana.[21] The MOU transferred all rights and responsibilities of the Collectors, and their respective taxing agencies, to the Remote Sellers Commission related to remote sales made into the State by remote sellers.[22]   Specifically, the MOU provides that:

- the Remote Sellers Commission shall serve as the single entity within the state of Louisiana responsible for all state and local sales and use tax administration, return processing and audits for remote sales delivered into Louisiana;[23]

---

[18] *See* ¶16 of the Granier Aff., the Drude Aff., and the Butts Aff.

[19] *See* ¶17 of the Granier Aff., the Drude Aff., and the Butts Aff.; The Remote Sellers Commission's website is located at "remotesellers.louisiana.gov".

[20] *See* ¶18 of the Granier Aff., the Drude Aff., and the Butts Aff.

[21] *See* ¶¶22 and 36 of the Granier Aff., the Drude Aff., and the Butts Aff.; *See also* the MOU executed by each of the Collectors, attached as Exhibit "1" to the Granier Aff., the Drude Aff., and the Butts Aff. (collectively, the "MOUs").

[22] *See* ¶22 of the Granier Aff., the Drude Aff., and the Butts Aff.

[23] *See* ¶26 of the Granier Aff., the Drude Aff., and the Butts Aff.; *See also* the MOUs at Section D.5.

- the Remote Sellers Commission serves as the central, single agency to which remote sellers shall make state and local sales and use tax remittances;[24]

- the Remote Sellers Commission is the single authority to assign and direct audits of remote sellers for both the state and all local taxing authorities;[25]

- the Remote Sellers Commission has the authority to conduct administrative hearings as requested by aggrieved remote sellers and to make all decisions related to such matters;[26]

- the Remote Sellers Commission has the authority to issue all notices required by law to enforce collection of local sales and use tax that may be due from remote sellers;[27] and

- the Remote Sellers Commission is authorized to require remote sellers to register with the Remote Sellers Commission on behalf of the local taxing jurisdictions.[28]

Since the commencement of the Remote Sellers Commission on July 1, 2020, at least 4,816 entities have registered as remote dealers with the Remote Sellers Commission and are filing monthly returns and remitting collected sales taxes via electronic fund transfer.[29]   Additionally, the Remote Sellers Commission averages 232 new, approved registrants per month.[30]   As of

---

[24] *See* ¶27 the Granier Aff., the Drude Aff., and the Butts Aff.; *See also* the MOUs at Section D.6.
[25] *See* ¶28 the Granier Aff., the Drude Aff., and the Butts Aff.; *See also* the MOUs at Section D.7.
[26] *See* ¶29 the Granier Aff., the Drude Aff., and the Butts Aff.; *See also* the MOUs at Section D.9.
[27] *See* ¶30 the Granier Aff., the Drude Aff., and the Butts Aff.; *See also* the MOUs at Section D.10.
[28] *See* ¶31 the Granier Aff., the Drude Aff., and the Butts Aff.; *See also* the MOUs at Section D.11.
[29] *See* ¶38 the Granier Aff., the Drude Aff., and the Butts Aff.; *See also* the Remote Sellers Commission Collection and Distribution Report dated December 14, 2021 (the "Report"), attached to each of the Granier Aff., the Drude Aff., and the Butts Aff. as Exhibit "3" (the Report is available to the public at:
https://revenue.louisiana.gov/Miscellaneous/RSC%20Collection%20and%20Distribution%20Report%2012.14.21.pdf).
[30] *Id*.

December 14, 2021, the Remote Sellers Commission has collected and distributed at least $454,769,632.49 in sales and use tax to the State and parish sales and use tax collectors.[31]

By registering with the Remote Sellers Commission, a remote dealer files a *single, monthly* sales tax return with the Remote Sellers Commission, which reports all sales made into Louisiana and includes the state and local sales and use taxes related thereto.[32]  Furthermore, "in order to reduce the administrative burden for Remote Sellers, the Commission has compiled the state and local sales and use tax bases and rates on its website [remotesellers.louisiana.gov]".[33]  In turn, remote sellers "will know the exact rate of state and local sales and use tax to collect as well as if the rate is reduced in part or full because of an exemption or exclusion" using jurisdictional codes established by the Commission.[34]

Based on the foregoing, at no time since the U.S. Supreme Court's ruling in *Wayfair* has a remote dealer been required to file multiple returns with different parishes in Louisiana.[35]  And prior to *Wayfair*, *Quill* would have prohibited attempts by the State or local collectors to require remote sellers to file and remit sales tax returns due to a lack of physical nexus.[36]

---

[31] *See* ¶39 of the Granier Aff., the Drude Aff., and the Butts Aff.; *See also* the Report.  Since its commencement on July 1, 2020, the Remote Sellers Commission has remitted the following amounts of sales and use tax to the Collectors:
(1) Lafourche Parish - $4,512,535.50.  *See* ¶19 the Granier Aff.
(2) Tangipahoa Parish - $5,184,471.00.  *See* ¶19 the Drude Aff.
(3) Washington Parish - $1,762,651.37.  *See* ¶19 the Butts Aff.
[32] *See* ¶10 of the Granier Aff., the Drude Aff., and the Butts Aff.
[33] *See* ¶34 of the Granier Aff., the Drude Aff., and the Butts Aff.; *See also* No. 17 of the Remote Sellers Commission Frequently Asked Questions (the "FAQs") attached to each of the Granier Aff., the Drude Aff., and the Butts Aff. as Exhibit "2" (the FAQs are available to the public at: https://revenue.louisiana.gov/Miscellaneous/Remote%20Sellers%20FAQs%2006.24.2020.pdf).
[34] *See* ¶35 of the Granier Aff., the Drude Aff., and the Butts Aff; *See also* No. 17 of the FAQs.
[35] *See* ¶20 of the Granier Aff., the Drude Aff., and the Butts Aff.
[36] *See* ¶21 of the Granier Aff., the Drude Aff., and the Butts Aff.

## II.     PLAINTIFF'S COMPLAINT.

Plaintiff seeks declaratory and injunctive relief on the grounds that the core sales and use tax powers granted to the Collectors under the Louisiana Constitution and related statutes, which comprise the essential structure and content of Louisiana's sales state and local sales tax system, unconstitutionally burden interstate commerce in violation of the Commerce Clause and the Due Process Clause of the United States Constitution.  Plaintiff's alleged injury from these provisions of law is that it "risks" losing potential revenue from Louisiana by refusing, on its own volition, to surpass the economic thresholds set forth under La. R.S. 47:301(4)(m)(i).[37]  However, and as explained below, the majority of the hypothetical burdens contemplated by Plaintiff in the Complaint currently do not, and likely will not, apply to Plaintiff as a remote dealer for Louisiana sales tax purposes.  Thus, without an actual injury suffered by Plaintiff – either present or anticipatory – the Complaint is reduced to nothing more than a general grievance of Louisiana's state and local sales and use tax system.

In the Complaint, Plaintiff states that it: (1) is an out-of-state corporation located in Arizona,[38] (2) has no physical nexus with Louisiana,[39] (3) makes sales into Louisiana which are shipped via common carrier,[40] and (4) engages in fewer than 200 transactions or, less than $100,000 in taxable sales in Louisiana in a single year.[41]  Therefore, Plaintiff currently does not qualify as a "dealer" under Louisiana sales tax law and as such, is not required to collect and remit state and local sales and use tax for its sales made into Louisiana.[42]

---

[37] *See* Plaintiff's Verified Complaint at ¶48.
[38] *See* Plaintiff's Verified Complaint at ¶5.
[39] *See* Plaintiff's Verified Complaint at ¶¶21 – 33.
[40] *See* Plaintiff's Verified Complaint at ¶33.
[41] *See* Plaintiff's Verified Complaint at ¶46.
[42] *See* ¶8 of the Granier Aff., the Drude Aff., and the Butts Aff.

However, Plaintiff's Complaint further describes and reflects a fundamentally flawed understanding of Louisiana's current state and local sales and use tax system and how that system would apply to Plaintiff's business. First, Plaintiff fails – either erroneously or intentionally – to mention the availability of the Remote Sellers Commission to remote sellers, such as Plaintiff, that meet the economic thresholds set forth in La. R.S. 47:301(4)(m)(i). Additionally, the following Paragraphs of the Plaintiff's Complaint are plainly false/incorrect:

> 44.  But selling beyond a de minimis number of orders in Louisiana has proven too complex and difficult for Halstead Bead because of the cost of registering and reporting taxes in each parish.

This claim is entirely false as Plaintiff can register once and report once monthly through application with the Remote Sellers Commission by visiting *remotesellers.louisiana.gov*.[43]

> 45.  On information and belief, Halstead Bead estimates that the costs of Louisiana registration and reporting would be $11,000 over three years.

There are no fees associated with sales tax registration and Plaintiff's basis for making this claim is unclear.[44]

> 49.  Louisiana Constitution, Article VII, Section 3(B)(1), provides that each Louisiana Parish shall levy and collect its own sales and use taxes.  Each parish has a single collector of taxes for its subdivisions, but there is not a statewide collection system. Id."…"53.  Because the Louisiana Constitution requires parish-level collection of sales and use taxes, the Louisiana Legislature cannot pass a statute to create a central repository for the collection of sales and use taxes…".

---

[43] *See* Section I.C. (The Louisiana Sales and Use Tax Commission for Remote Sellers.) *supra*; *See also* ¶9 of the Granier Aff., the Drude Aff., and the Butts Aff.
[44] *See* ¶¶3, 4 of the Granier Aff., the Drude Aff., and the Butts Aff.

As discussed above, pursuant to the MOU, the parishes have given the Remote Sellers Commission the authority to serve as the single entity in Louisiana for the collection and administration of state and local sales and use tax on remote sales sourced to Louisiana taxing jurisdictions.[45]

Moreover, there is no actual injury suffered by Plaintiff under the actual facts and circumstances surrounding Louisiana's current state and local sales and use tax regime.  Based on the undisputed facts in the Complaint regarding Plaintiff's operations in Louisiana, Plaintiff either: (1) does not meet the thresholds provided under La. R.S. 47:301(4)(m)(i), nor does it have physical nexus with Louisiana, and in turn, is not required to collect and remit state and local sales and use tax for its sales made into Louisiana; or (2) could make additional, remote sales into Louisiana to meet the economic nexus thresholds provided under La. R.S. 47:301(4)(m)(i), and in turn, will be treated as a remote dealer under La. R.S. 47:301(4)(m).  With regard to the latter, Plaintiff would report and remit state and local sales and use tax for its remote sales made into Louisiana solely with the Remote Sellers Commission.  Under either scenario, Plaintiff does not, and likely will not, suffer the hypothetical or anticipatory burdens/costs claimed in its Complaint.

Notwithstanding the substantive deficiencies contained in Plaintiff's Complaint, this Honorable Court need not reach the merits of Plaintiff's Complaint as this Court lacks subject matter jurisdiction to entertain this action and to provide the relief Plaintiff seeks.  As set forth more fully below, this Court should grant the motion to dismiss on behalf of the Collectors, dismissing all claims under the F.R.C.P. Rule 12.

---

[45] *See* ¶22 of the Granier Aff., the Drude Aff., and the Butts Aff.

## STANDARD OF REVIEW

**I.      Rule 12(b)(1).**

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted). An action may be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) on any of three separate grounds: (1) the complaint standing alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint, the undisputed facts, and the court's resolution of disputed facts. *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989).

**II.      Rule 12(b)(6).**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief may be granted. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [] a plaintiff's obligation to provide the 'grounds' for his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  "Determining whether a complaint states a plausible claim for relief will

... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868, 884 (2009).

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint, but it is not bound to accept "legal conclusions couched as factual allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) ("[A] plaintiff must plead specific facts, not mere conclusory allegations.").

## LAW AND ARGUMENT

**I.    THE PLAINTIFF'S LAWSUIT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(1).**

### A.    <u>This Action is not an Article III Case or Controversy.</u>

Plaintiff's complaint should be dismissed in its entirety pursuant to Rule (12)(b)(1) as Plaintiff's complaint does not contain a case or controversy under Art. III of the United States Constitution.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)) (internal quotation marks omitted).  Article III of the Constitution confines federal courts to the decision of actual "cases" and "controversies." *Shields v. Norton*, 289 F.3d 832, 834-35 (5th Cir. 2002).  In addition to the textual constitutional constraints on the power of the federal courts to decide cases under Article III, the federal judiciary also adhere to a set of prudential limitations.  *See Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 1161, 137 L.Ed.2d 281, 295 (1997).  In addressing whether an Article III case or controversy exists, the courts frequently recognize and apply the doctrines of standing, mootness, and ripeness.

*See Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556, 569 (1984); *Poe v. Ullman*, 367 U.S. 497, 504, 81 S.Ct. 1752, 1756, 6 L.Ed.2d 989, 996 (1961).

As discussed below, Plaintiff's Complaint should be dismissed as: (1) Plaintiff lacks standing, (2) Plaintiff's claims are not ripe, and (3) Plaintiff's claims are moot.

### i.   There is no Justiciable Case or Controversy Because Plaintiff Lacks Standing.

The doctrine of constitutional standing – an essential aspect of the case-or-controversy requirement of Article III, § 2 – requires a plaintiff have '"a personal stake in the outcome of the controversy' [so] as to warrant his invocation of federal-court jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (quoting *Baker v. Carr*, 369 U.S. 186 (1962)). At its "irreducible constitutional minimum," the doctrine of standing requires satisfaction of three elements: (1) a concrete and particularized injury-in-fact, either actual or imminent, (2) a causal connection between the injury and defendant's challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992).

A plaintiff must show more than a "possible future injury;" she must show that harm has actually occurred or is "certainly impending." *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). Neither conjectural future injuries nor alleged fear of such injuries are sufficient to confer standing. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013). The harm must be "distinct and palpable" and "actual or imminent." *United States v. Holy Land Found. For Relief & Dev.*, 445 F.3d 771, 779 (5th Cir. 2006) (citation omitted). A plaintiff that "alleges only an injury at some indefinite future time" has not shown an injury in fact, particularly where "the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan*, 504 U.S. at 564. In these situations, "the injury [must] proceed with a high degree of immediacy,

so as to reduce the possibility of deciding a case in which no injury would have occurred at all."

*Id.*

Based on the foregoing, Plaintiff must prove concrete facts to show in a particularized way how the alleged deficiencies in the Louisiana state and local sales and use tax system harms it. *See Warth v. Seldin*, 422 U.S. 490, 508 (1975). However, a review of the Petition and the allegations therein, do not suggest an "actual, concrete, and particularized" injury. *See Lujan*, 504 U.S. at 560-561. Rather, Plaintiff merely alleges it "risks" losing potential revenue from Louisiana because it refuses to surpass the *de minimis* thresholds set forth in La. R.S. 47:301(4)(m)(i), which would subject it to the asserted conjectural burdens of Louisiana's sales tax system. Moreover, the availability of the Remote Sellers Commission to the Plaintiff further calls into question the actual injury or burdens that could be suffered by Plaintiff, if any. The U.S. Supreme Court has previously held that such speculative injuries are categorically insufficient to support standing. *See, e.g., DaimlerChrysler Corp. v. Cuno*, 247 U.S. 332 (2006). [46] Therefore, Plaintiff has no "actual, concrete and particularized" injury, and in turn, lacks standing.

Moreover, Plaintiff cannot satisfy the requirement that its claimed injury be caused by the Defendant-Collectors. As stated above, Plaintiff's purported injury is a "risk" of loss of additional revenue from Louisiana due to Plaintiff's decision to abstain from Louisiana's sales and use tax

---

[46] In *DaimlerChrysler Corp. v. Cuno*, the U.S. Supreme Court considered whether plaintiff taxpayers had standing to challenge an Ohio tax incentive program, which gave tax breaks to DaimlerChrysler to establish an assembly plant in Ohio. Plaintiffs claimed that they were injured by state tax incentives granted to DaimlerChrysler because the tax breaks "diminished the funds available to the city and State, imposing a 'disproportionate burden' on plaintiffs." *Cuno*, 547 U.S. at 340. The Court dismissed the case for lack of standing, emphasizing that the alleged injury was "conjectural or hypothetical" rather than "concrete and particularized" as required by Article III. *Id.* at 344. In so holding, the Court noted that establishing the alleged injury depended upon "how legislators respond to a reduction in revenue" and required "speculating that elected officials will increase a taxpayer-plaintiff's tax bill to make up a deficit." *Id.*

system.  However, the Collectors have nothing to do with the business decisions of Plaintiff. The Collectors cannot control where the Plaintiff chooses to operate, nor can they control the amount of business conducted by Plaintiff in any particular jurisdiction.  Rather, the decision of whether to operate in a jurisdiction by weighing the costs and gains associated with such operation is Plaintiff's alone.

The Second Circuit has recognized a break in the "chain of causation" where the plaintiff's injury is so completely due to plaintiff's own fault as to break the causal chain between defendants and the alleged injury.  *See, e.g., St. Pierre v. Dyer*, 208 F.3d 394, 402-03 (2d Cir. 2000); *see also Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006) (recognizing that "[a] plaintiff cannot establish Article III standing to pursue a cause of action where the plaintiff is the primary cause of its own alleged injury" and holding plaintiffs lacked standing because "the injury of which the plaintiffs complain appears to be largely the result of their own [] decisions").  Similarly, in the instant matter, the Collectors cannot be held responsible for the business decisions of Plaintiff.  This absence of "causation" also warrants dismissal for lack of standing.

Based on the foregoing, this Court does not have jurisdiction due to lack of standing and this action must be dismissed for lack of subject matter jurisdiction.

### ii.  There is no Justiciable Case or Controversy Because Plaintiff's Claims are not Ripe.

"The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."  *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (quotation omitted). It "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies."  *Id.* at 807.  A case ripe for judicial review cannot be

"nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 244 (1952).  Thus, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted).

As the Second Circuit has explained, "when a court declares that a case is not prudentially ripe, it means that the case will be *better* decided later . . . [not] that the case is not a real or concrete dispute affecting cognizable current concerns of the parties." *Connecticut v. Duncan*, 612 F.3d 107, 113-14 (2d Cir. 2010) (internal quotation marks and citations omitted) (emphasis in original). "Prudential ripeness is, then, a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial." *Id*. at 114 (internal quotation marks and citation omitted).  Additionally, the Second Circuit has held "[w]here the challenged procedures have not been applied to the claimant, or where, after their application, the agency has not rendered a final determination adverse to the claimant, the Article III requirements...have not been met." *Coffran v. Bd. Of Tr. NYC Pension Fund*, 46 F.3d 3, 4 (2d Cir. 1994).

Applying the foregoing, Plaintiff's claim challenging the constitutionality of Louisiana's sales tax system, based on alleged burdens it has yet to incur and the mere conjecture of potential loss of revenue, is both constitutionally and prudentially unripe.  Plaintiff has not registered with any of the Collectors, nor has there been any attempt by the Collectors to force the Plaintiff to

register or attempt to assess/collect sales and use taxes from Plaintiff.[47]  It is an undisputed fact that Plaintiff has not met any of thresholds set forth under La. R.S. 47:301(4)(m)(i) and has no physical nexus with Louisiana, and in turn, is not required to collect and remit state and local sales and use tax for its sales made into Louisiana.  Whether Plaintiff will suffer any of the hypothetical burdens claimed by Plaintiff as a result of surpassing the thresholds in La. R.S. 47:301(4)(m)(i) is yet to be determined.  Moreover, Plaintiff has not acknowledged the availability of the Remote Sellers Commission.   As described above, Plaintiff's registration with the Remote Sellers Commission may remove most of the burdens and injuries Plaintiff claims it would suffer.  At this point, the entirety of Plaintiff's claims are dependent upon future uncertainties or intervening, contingent future events that may not occur as anticipated, or indeed may not occur at all.  *See Texas,* 523 U.S. at 300.  Therefore, the case is not ripe since the issues are not fit for judicial decision and Plaintiff will suffer no cognizable hardship if this Court denies review.

### iii.  There is no Justiciable Case or Controversy Because Plaintiff's Claims are Moot.

Under Article III of the United States Constitution, federal courts may adjudicate only "actual, ongoing controversies between litigants." *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988); *Alwan v. Ashcroft*, 388 F.3d 507, 511 (5th Cir. 2004).  "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (citations omitted). "If a dispute has been resolved or if it has evanesced because of changed circumstances . . . it is considered moot." *Am. Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual

---

[47] *See, e.g.,* ¶¶5 – 7 of the Granier Aff., the Drude Aff., and the Butts Aff.

controversy about the plaintiffs' particular legal rights."). Where the question of mootness arises, the Court must resolve it before it can assume jurisdiction. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). If a controversy is moot, the trial court lacks subject matter jurisdiction over it. *Carr v. Saucier*, 582 F.2d 14, 15–16 (5th Cir. 1978). A federal court lacks authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992).

Applying these standards to the case at hand, the bulk of Plaintiff's claims are moot as there is no existing controversy before this Court. As set forth above, the Remote Sellers Commission currently serves as the single entity in Louisiana for the collection and administration of state and local sales and use tax on remote sales sourced to Louisiana taxing jurisdictions. Upon which time Plaintiff makes the requisite additional sales into Louisiana, it will be considered a "remote dealer" and will complete a single registration with the Remote Sellers Commission.[48] Plaintiff would thereafter file a single, monthly sales tax return with the Remote Sellers Commission.[49] Therefore, the majority of the hypothetical burdens anticipated by Plaintiff, even if accepted as true, would not be applicable to Plaintiff. Moreover, it is an undisputed fact that Plaintiff currently does not meet of thresholds set forth under La. R.S. 47:301(4)(m)(i) and lacks physical presence with Louisiana, and in turn, is not required to collect and remit state and local sales and use tax for its sales made into Louisiana.[50] As a result, no actual case or controversy exists in this matter. Thus, if this Court granted the extreme relief requested in the Complaint, it would be providing opinions upon moot questions or abstract propositions, or to declare principles

---

[48] *See* ¶9 of the Granier Aff., the Drude Aff., and the Butts Aff.
[49] *Id*.
[50] *See* ¶8 of the Granier Aff., the Drude Aff., and the Butts Aff.

or rules of law that do not affect the specific matter (and particular plaintiff) in the case before it. *See Church of Scientology of Cal.*, 506 U.S. at 12.  Accordingly, the Plaintiff's claims are moot and the Court therefore lacks jurisdiction over this case.

**B.  The Tax Injunction Act Preempts Jurisdiction Over Plaintiff's Complaint.**

The Tax Injunction Act (the "TIA") is a "broad restriction on federal jurisdiction in suits that impede state tax administration" that separately bars this Court from entertaining Plaintiff's claims as the federal litigation "would be impermissibly disruptive of [Louisiana's] tax system". *United Gas Pipeline Co. v. Whitman,* 595 F.2d 323, 326, 329 (5th Cir. 1979). Specifically, the TIA provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.  The primary purpose of the TIA was "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *California v. Grace Brethren Church*, 457 U.S. 408-09 (1982) (internal quotation omitted).  The TIA prohibits claims for declaratory as well as injunctive relief.  *Id.* at 411.  The Supreme Court has declared that the TIA "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a state to administer its own fiscal operations.  *Tully v. Griffin*, 429 U.S. 68, 73 (1976).[51]

"The Tax Injunction Act imposes an equitable duty on federal district courts to refrain from exercising jurisdiction over claims arising from state revenue collection except when state remedies could prevent a taxpayer from asserting a federal right." *Smith v. Travis County Educ.*

---

[51] The power to tax is basic to the ability of the State to exist.  *M'Culloch v. Maryland*, 17 U.S. (4 Wheat) 316, 339 (1819) (Marhsall, J.); *see also Arkansas v. Farm Credit Servs. of Cent. Arkansas*, 520 U.S. 821, 826 (1997) ("The States' interest in the integrity of their own processes is of particular moment respecting questions of state taxation").

*Dist.*, 968 F.2d 453, 455 (5th Cir. 1992) (quoting *McQueen v. Bullock*, 907 F.2d 1544, 1547 (5th Cir. 1990)). "This restraint emerges from 'the scrupulous regard [of the federal courts] for the rightful independence of state governments . . . and a proper reluctance to interfere by injunction with their fiscal operations.'" *Id*. (quoting *Matthews v. Rodgers*, 284 U.S. 521, 525 (1932)).

As originally enacted, the TIA provided that "no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain . . . [.]" Act of Aug. 21, 1937, 50 Stat. 738, codified at 28 U.S.C. § 41(1) (1940 ed.). Although the explicit reference to jurisdiction was removed in the 1948 United States Code revisions, the U.S. Supreme Court has continued to refer to the TIA as limiting subject matter jurisdiction. *See Direct Marketing Ass'n v. Brohl*, 135 S.Ct. 1124, 1133–34 (2015); *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 429 n.10 & 433 (2010) (Thomas, J., concurring); *Farm Credit Servs. of Central Ark.*, 520 U.S. at 825–26.

An example of the TIA's broad-sweeping jurisdictional limitations was confirmed in the U.S. Supreme Court's refusal to hear a case involving an Eighth Circuit decision that the TIA and principles of comity deprived the federal court of jurisdiction in a commercial activity tax ("CAT") challenge. *See Diversified Ingredients, Inc. v. Testa*, 137 S.Ct. 2247, 198 L.Ed.2d 679 (2017). In *Diversified Ingredients Inc. v. Testa*, the Eighth Circuit upheld a federal district court's decision to dismiss an out-of-state company's claim that an Ohio CAT assessment was prohibited by the federal Interstate Income Act. 846 F.3d 994 (8th Cir. 2017), cert. denied 137 S.Ct. 2247 (2017). The U.S. Supreme Court's denial of certiorari meant the challenge to the Ohio CAT under a federal law (P.L. 86-272) had to be pursued through Ohio's appeals process instead. *Id*. at 997.

Additionally, a plain, speedy and efficient remedy exists where a state provides a procedural vehicle that affords taxpayers the opportunity to raise their federal constitutional claims. *See Smith*, 968 F.2d at 456 (citing *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512–

13).  "The touchstone for whether a taxpayer has a 'plain, speedy, and efficient' remedy is whether she is entitled to a 'full hearing and judicial determination at which she may raise any and all constitutional objections to the tax.'" *Amos v. Glynn Cty. Bd. of Tax Assessors*, 347 F.3d 1249, 1255 (11th Cir. 2003) abrogated on other grounds by *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 280, 125 S. Ct. 1517, 1518, 161 L. Ed. 2d 454 (2005) (internal citations omitted). A state provides a plain, speedy and efficient remedy when it provides taxpayers "with a 'full hearing and judicial determination,'" with ultimate review available in the United States Supreme Court pursuant to 28 U.S.C. § 1257. *Rosewell*, 450 U.S. at 514 (quoting S. Rep. No. 701, 72d Cong., 1st Sess., 1–2 (1932)) (citation omitted).  Accordingly, the taxpayer has the burden of establishing facts sufficient to overcome the jurisdictional bar of the TIA. *Amos*, 347 F.3d at 1256.

Considering the foregoing, Louisiana law clearly provides a "plain, speedy, and efficient" remedy as taxpayers have an avenue to adjudicate their claims before the Louisiana Board of Tax Appeals or State district court, which will "hear and decide" a claim that a state tax has been invalidly assessed or collected.  *See Rosewell*, 450 U.S. at 517; *see* La. R.S. 47:1565, La. R.S. 47:337.51, La. R.S. 47:1407, and La. R.S. 47:1431 *et seq*.  Moreover, the Louisiana Legislature has recently amended and enacted La. R.S. 47:1407(7) to grant the Louisiana Board of Tax Appeals the explicit jurisdiction to hear actions related to the constitutionality of a Louisiana sales and use tax law. *See* Act No. 365 of the 2019 Regular Session of the Louisiana Legislature. An appeal of such a judicial determination proceeds through the Louisiana appellate courts, the Louisiana Supreme Court, and then is appealable to the United States Supreme Court. *See* La. Rev. Stat. § 47:1434-1435. Thus, Louisiana's statutory scheme meets the requirements of the TIA to preclude federal jurisdiction over claims such as those raised by the Plaintiff.  No federal forum in this state tax dispute is required or appropriate.

Even with the remedies afforded under Louisiana law through its state court system, Plaintiff here asks the federal courts for declaratory and injunctive relief regarding Louisiana's Constitution and related taxing statutes on the grounds that such provisions of law violate the Commerce Clause and the Due Process Clause of the United States Constitution. In doing so, Plaintiff seeks to invalidate by declaratory judgment, and further enjoin, the core sales and use tax powers granted to the Collectors under the Louisiana Constitution and related statutes, which comprise the essential structure and content of Louisiana's sales state and local sales tax system.

Accordingly, it is clear that granting the extreme relief requested by Plaintiff would enjoin, suspend, or restrain the assessment, levy, or collection of taxes by the State and parishes, which includes the Collectors in this action.  Moreover, the exercise of federal jurisdiction herein would go against one of the legislative purposes in enacting the TIA: "the elimination of disruption in state and local financing by out-of-state corporations bringing suit in federal court". *United Gas Pipeline Co.,* 595 F.2d at 329.  Based on the foregoing, Plaintiff's suit is the exact type of action Congress sought to prevent in the enactment of the TIA.  Thus, Plaintiff's suit must be dismissed as this Court is without jurisdiction to consider Plaintiff's claims under the TIA.

**C.  This Action is Independently Barred by the Principle of Federal Comity.**

Completely independent of the TIA, Plaintiff's claims are barred by the broader principle of federal comity.  The TIA is only "a partial codification of the federal reluctance to interfere with state taxation." *National Private Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 590 (1995). Even though the TIA acts as a broad jurisdictional barrier, as described above, its precursor, the comity doctrine, is "more embracive."  *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 417, 424 (2010).  The comity doctrine reflects:

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments,

> and a continuance of the belief that the National Government will
> fare best if the States and their institutions are left free to perform
> their separate functions in separate ways.

*Id*. at 421 (quoting *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 112 (1981)).

"Comity's constraint has particular force when lower federal courts are asked to pass on the

constitutionality of state taxation of commercial activity." *Id.*  Thus, even where the TIA does not

preclude jurisdiction, "principles of federalism and comity generally counsel that courts should

adopt a hands-off approach with respect to state tax administration."  *National Private Council*,

515 U.S. at 586.

Under these principles, if the Court has reservations about whether the TIA bars this action,

or if the Court simply prefers to avoid resolving that issue, then the comity doctrine still calls for

the case to be dismissed.  *See Levin*, 560 U.S. at 432.  Pursuant to the comity doctrine, "federal

courts refrain from 'interfer[ing]…with the fiscal operations of the state governments…in all cases

where the Federal rights of persons could otherwise be preserved unimpaired'" through remedies

available under state law.  *Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1134 n.7 (10th Cir. 2016)

(quoting *Levin*, 560 U.S. at 422).  There is no doubt that Plaintiff's Complaint "in every practical

sense operate[s] to suspend collection of the state taxes until the litigation [is] ended".  *Fair*

*Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 112 (1981).

Based on the foregoing, the relief Plaintiff seeks would directly interfere with the ongoing

fiscal operations of Louisiana and its parishes, which implicates an important state/sovereign

interest.  In addition, Plaintiff can receive proper adjudication of its federal constitutional

arguments through Louisiana's court system.  Under these circumstances, dismissal of Plaintiff's

Complaint pursuant to the comity doctrine is warranted.

## II.    THE PLAINTIFF'S LAWSUIT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6).

Even if jurisdiction were found to exist, the Collectors alternatively argue that the Plaintiff has failed to state a claim for relief.  *See* F.R.C.P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of the complaint by accepting "all well-pleaded facts as true and viewing those facts in the light most favorable to [the plaintiff]."  *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

However, it is insufficient for the complaint's factual allegations to "merely create[] a suspicion that the pleader might have a right of action." *Campbell*, 43 F.3d at 975; *see also Twombl*y, 550 U.S. at 555 (holding that the Rule 8 pleading standard demands more than a formulaic the-defendant-unlawfully-harmed-me accusation). Instead, to survive a motion to dismiss, a complaint requires more than a "sheer possibility that a defendant has acted unlawfully," or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations omitted).

Although the Court need not reach this issue, Petitioner has failed to state a claim for relief, which requires dismissal under Rule 12(b)(6).  As stated above, Plaintiff has not registered with any of the Collectors, nor has there been any attempt by the Collectors to force the Plaintiff to register or attempt to assess/collect sales and use taxes from Plaintiff.[52]  Further, it is an undisputed

---

[52] *See* ¶¶5 – 7 of the Granier Aff., the Drude Aff., and the Butts Aff.

fact that Plaintiff has not met any of thresholds set forth under La. R.S. 47:301(4)(m)(i) and lacks physical nexus with Louisiana, and in turn, is not required to collect and remit state and local sales and use tax for its sales made into Louisiana.  Plaintiff's only claim for relief is an alleged injury that Plaintiff "risks" losing potential revenue from Louisiana by refusing – on its own volition – to surpass the economic thresholds set forth under La. R.S. 47:301(4)(m)(i).[53]

And as noted above, for whatever reason, either due to ignorance of the availability of the Remote Sellers Commission to Plaintiff or intentionally omitting the availability of the Remote Sellers Commission, the pleadings are just plain false with regard to the hypothetical burdens/costs contemplated to be suffered by Plaintiff.   Certainly, this Court can take judicial notice of the factual existence of the Remote Sellers Commission as the single collector for remote dealers as defined by La. R.S. 47:301(4)(m)(i).[54] Such a speculative request for relief based on hypothetical injuries that only creates a suspicion that Plaintiff may have a right of action, is the type of mere conclusory allegations Rule 12(b)(6) seeks to avoid.  Thus, based on the Complaint before this Court, Plaintiff has failed state a proper claim for relief and the Complaint should be dismissed under Rule 12(b)(6).

## III.    EVEN IF SUBJECT MATTER JURISDICTION IS PRESENT, THIS COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION HEREIN.

In the event this Court should find it has subject matter jurisdiction (which the Collectors deny exists for the above reasons), it should decline to exercise jurisdiction under the abstention doctrines espoused in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) and its progeny. The *Burford* abstention doctrine requires federal courts to "decline to interfere

---

[53] *See* Plaintiff's Verified Complaint at ¶48.
[54] *See* ¶18 of Granier, Drude, and Butts Affidavits attached hereto as Exhibits "A", "B" and "C", respectively. *See also* La. Rev. Stat. §§47:339(A)(2) and §47:340(G).

with complex state regulatory schemes in cases involving (1) difficult state law questions bearing on policy problems of substantial public import, or (2) efforts to establish a coherent state policy regarding a matter of substantial public concern." *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 2514-15, 105 L.Ed.2d 298 (1989). Federal courts should abstain from exercising federal jurisdiction under the *Burford* doctrine when the state interests at stake are "paramount"; such as "when a state administrative scheme guards an 'over-all plan of regulation...of vital interest to the general public' from federal interference." *Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 316 (5th Cir. 2021).

Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise, "refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest"; as it "is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford*, 319 U.S. at 318 (1943) (citations omitted). The *Burford* abstention doctrine is applicable when the plaintiff's claim may be "in any way entangled in a skein of state law that must be untangled before the federal case can proceed." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 727, 116 S.Ct. 1712, 1726, 135 L.Ed.2d 1 (1996) (quoting *McNeese v. Board of Ed. for Community Unit Sch. Dist.*, 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963)). The Supreme Court has described *Burford* abstention as applicable "[w]here timely and adequate state-court review is available." *New Orleans Public Serv., Inc.*, 491 U.S. at 361.

In *Burford*, plaintiff, Sun Oil, brought a federal suit challenging a Texas Railroad Commission order granting a drilling permit to defendant, Burford. Sun Oil claimed the permit

30

violated its due process rights. The Supreme Court found that under Texas law, "the Texas courts are working partners with the Railroad Commission in the business of creating a regulatory system for the oil industry." *Burford,* 319 U.S. at 326 (emphasis added). The Court held that the federal district court should have abstained, noting the comprehensive nature of the state regulatory scheme, the large interest of the state in regulating and conserving its oil and gas resources, and the need for a unified approach to granting permits by a single adjudicatory body.

Likewise, in the instant matter, the State and local governments are working partners for the purposes of taxation as evidenced by the statutory and regulatory scheme adopted by them in "Title 47. Revenue and Taxation" in of the Louisiana Revised Statutes, specifically those provisions establishing the Remote Sellers Commission contained in Act 274. Federal Courts are required to abstain under *Burford* when the State's interests in "maintaining 'uniformity in the treatment of an 'essentially local problem' and retaining local control over 'difficult questions of state law bearing on policy problems of substantial public import'" outweigh "the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court." *Quackenbush*, 517 U.S. at 728. Louisiana's interest in maintaining uniformity in the application of its tax laws is reflected in the structure of the statute and the regulations, and indeed, in the Constitution of the State of Louisiana itself. Similar to the statutory permitting scheme in *Burford*, the Louisiana Constitution and Title 47 of the Louisiana Revised Statutes provides Louisiana a unified scheme for sales and use taxes assessed and collected throughout the State. The application of *Burford* abstention requires that this Honorable Court abstain from exercising its federal jurisdiction herein.

As the United States Court of Appeals, Fifth Circuit observed in *Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697 (5th Cir. 1999), the *Burford* doctrine requires the court to "weigh the

federal interests in retaining jurisdiction over the dispute against the state's interests in independent action to uniformly address a matter of state concern, and to abstain when the balance tips in favor of the latter." *Webb*, 174 F.3d 700-01. The *Burford* abstention has been routinely applied in situations involving comprehensive state administrative and regulatory schemes and where issues concerning state public policy override. *See*, *e.g.*, *Sierra Club v. City of San Antonio*, 112 F.3d 789 (5th Cir. 1997); *Metro Riverboat Associates, Inc. v. Bally's Louisiana, Inc.*, 142 F.Supp.2d 765 (E.D. La. 2001).

The relief requested by Plaintiff herein – an injunction prohibiting the Collectors from enforcing the tax regulatory scheme as mandated by the Louisiana Constitution and promulgated by the laws created by the Legislature for the State of Louisiana – would improvidently interfere with multiple issues of Louisiana public policy and Louisiana administrative and regulatory schemes. *See*, *e.g.*, *Fair Assessment in Real State Assn v. McNary,* 454 U.S. 100 (1981).  As such, even if this Honorable Court determines that it has jurisdiction over the instant matter, it should abstain from exercising said jurisdiction to prevent interference with Louisiana's administrative and regulatory tax schemes.

## IV.    PLAINTIFF'S HYPOTHETICAL COMMERCE CLAUSE CLAIM.

Assuming *arguendo*, that Plaintiff was actually a remote dealer meeting the La. R.S. 47:301(4)(m)(i) threshold, Plaintiff's Commerce Clause claim would fail.  Considering the standards enunciated by the U.S. Supreme Court in *Wayfair* to the *actual* facts herein, the requirement for "dealers" defined under La. R.S. 47:301(m) to file and remit taxes to the Remote Sellers Commission is neither discriminatory nor unduly burdensome.[55]

---

[55] As the *Wayfair* Court noted, "This Court's [Commerce Clause] doctrine has developed further with time. Modern precedents rest upon two primary principles that mark the boundaries of a State's authority to regulate interstate commerce.  First, state regulations may not discriminate

The U.S. Supreme Court in *Wayfair*, *in dicta*, stated that:

> "South Dakota's tax system includes several features that appear designed to prevent discrimination against or undue burdens upon interstate commerce.  First, the [South Dakota] Act applies a safe harbor to those who transact only limited business in South Dakota. Second, the Act ensures that no obligation to remit the sales tax may be applied retroactively. [] Third, South Dakota is one of more than 20 States that have adopted the Streamlined Sales and Use Tax Agreement. [] This system standardizes taxes to reduce administrative and compliance costs: It requires a single, state level tax administration, uniform definitions of products and services, simplified tax rate structures, and other uniform rules…".

*Wayfair*, 138 S.Ct. at 2099-2100.

Louisiana's response to *Wayfair* was to create a framework to provide a "safe harbor" for "those who transact only limited business," as did South Dakota, by adopting the identical $100,000 annual sales or 200 transaction threshold limits in its passage of Act 5.  The obligations to commence collection and reporting was not applied retroactively and began in 2018, following the passing of Act 5, *supra*.  While Louisiana is not a party to the Streamlined Sales and Use Tax

---

against interstate commerce; and second, States may not impose undue burdens on interstate commerce. State laws that discriminate against interstate commerce face 'a virtually per se rule of invalidity.' [] State laws that 'regulat[e] even-handedly to effectuate a legitimate local public interest ... will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.' [] Although subject to exceptions and variations, [] these two principles guide the courts in adjudicating cases challenging state laws under the Commerce Clause." *South Dakota v. Wayfair, Inc.*, 138 S.Ct. 2080, 2090-91, 201 L.Ed.2d 403, 416 (2018) (internal citations omitted).  The *Wayfair* Court further stated that, "[t]hese principles also animate the Court's Commerce Clause precedents addressing the validity of state taxes.  The Court explained the now-accepted framework for state taxation in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977).  The Court held that a State 'may tax exclusively interstate commerce so long as the tax does not create any effect forbidden by the Commerce Clause.' [] After all, 'interstate commerce may be required to pay its fair share of state taxes.' [] The Court will sustain a tax so long as it (1) applies to an activity with a substantial nexus with the taxing State, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services the State provides." *Wayfair*, 138 S.Ct. at 2091 (internal citations omitted).

Agreement, the Louisiana Legislature created the Remote Sellers Commission – the single, state level administrator for registration, reporting and collections of remote sales.  All sales and use tax "definitions", by law are uniformly applied to both state and local jurisdictions. *See* La. Rev. Stat. § 47:301 and La. Rev. Stat. § 47:337.6(B).  Collection of delinquent taxes is centralized with the Remote Sellers Commission and the enabling statute requires the Remote Sellers Commission to follow collection remedies currently utilized by the State of Louisiana in tax related matters under Chapter 18 of Title 47. *See* La. Rev. Stat. § 47:340(F).  The Remote Sellers Commission is further vested with the power to make rules specifically to it duties and responsibilities. *See* La. Rev. Stat. § 47:340(F).

Quite simply, the facts in this matter reveal the numerous, and erroneous, "factual" allegations contained in Plaintiff's Complaint:

- Paragraph 78 (Louisiana requires parish-by-parish registration and reporting);

- Paragraph 79 (each taxing jurisdiction may create its own definitions);

- Paragraph 80 (no single point of contact for out-of-state sellers required to collect Louisiana taxes);

- Paragraph 81 (no software much less state supplied software for registering and reporting); and

- Paragraph 82 (no safe harbor as a result of no state-approved software).

As shown herein, these allegations contained in Plaintiff's Complaint, which serve as the basis and fabric of Plaintiff's claims of undue burden, are absolutely and patently false statements.

While Louisiana does not pretend to have a simplified tax rate structure, the filing and reporting is made simple by virtue of the creation online portal by the Remote Sellers Commission. Proof of its usefulness and ease of use is evident by the number of current users: "4,816 entities

have registered as remote dealers with the Remote Sellers Commission and are filing monthly returns and remitting collected sales tax via electronic fund transfer," with an average of 232 new, approved registrants per month.[56]   Therefore, Plaintiff's claims under the Commerce Clause are patently moot and premature as it has no obligations to register, file and remit taxes in Louisiana based upon the facts plead in its Petition.

## V.     PLAINTIFF'S HYPOTHETICAL DUE PROCESS CLAIM.

The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause "centrally concerns the fundamental fairness of governmental activity." *Quill Corp.* v. *North Dakota*, 504 U.S. 298, 312 (1992), overruled on other grounds, *Wayfair, Inc.*, 138 S.Ct. 2080.

In the context of state taxation, the Due Process Clause limits states to imposing only taxes that "bea[r] fiscal relation to protection, opportunities and benefits given by the state." *Wisconsin* v. *J. C. Penney Co.*, 311 U.S. 435, 444 (1940). The power to tax is, of course, "essential to the very existence of government," *McCulloch* v. *Maryland*, 4 Wheat. 316, 428 (1819), but the legitimacy of that power requires drawing a line between taxation and mere unjustified "confiscation." *Miller Brothers Co.* v. *Maryland*, 347 U.S. 340, 342 (1954). That boundary turns on the "[t]he simple but controlling question . . . whether the state has given anything for which it can ask return." *Wisconsin*, 311 U.S. at 444.

The Court applies a two-step analysis to decide if a state tax abides by the Due Process Clause. *See Quill* 504 U.S. at 306.  First, and most relevant here, there must be "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax."

---

[56] *See* ¶38 the Granier Aff., the Drude Aff., and the Butts Aff.; *See also* the Report.

*Id.* Second, "the income attributed to the State for tax purposes must be rationally related to values connected with the taxing State." *Id.* (internal quotations omitted).

To determine whether a State has the requisite "minimum connection" with the object of its tax, this Court borrows from the familiar test of *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945). *See Quill*, 504 U.S. at 307. A State has the power to impose a tax only when the taxed entity has "certain minimum contacts" with the State such that the tax "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.*, 326 U.S. at 316; *see also Quill*, 504 U.S. at 308. The "minimum contacts" inquiry is "flexible" and focuses on the reason-ableness of the government's action. *Quill*, 504 U. S. at 307. Ultimately, only those who derive "benefits and protection" from associating with a State should have obligations to the State in question. *International Shoe*, 326 U. S. at 319.

As of this filing, Plaintiff admittedly does not have minimum contacts with Louisiana.[57] Its sales into Louisiana are considered *de minimus* and below the threshold standard set by Louisiana law in accordance with the *Wayfair* ruling. Louisiana and its parishes have taken nothing nor demanded anything of Plaintiff. The laws of Louisiana make no demands on Plaintiff and impose no duty on Plaintiff. On the other hand, should Plaintiff one day meet the definitional standard found in La. R.S. 47:301(4)(m)(i), these threshold standards would satisfy the minimum connection or contacts threshold as found in *Wayfair*. But as Plaintiff's Complaint currently exists before this Court, these Due Process claims are clearly moot and premature.

---

[57] *See* Plaintiff's Verified Complaint at ¶¶5, 21 – 33, and 46.

## VI.     THE 1983 CLAIMS FAIL ON THE MERITS.

Plaintiff cites to 42 U.S.C. §1983 in its request for attorney's fees and costs. However, Plaintiff fails to make an actual 1983 claim, as it cites neither facts nor law that support that position. Although Plaintiff has failed to make a valid 1983 claim, if such a claim was properly made herein, the Collectors are entitled to dismissal of those claims.

### A.  Claims against the Individual Defendants in Their Official Capacity.

In addition to naming the Collectors individually, as defendants, Plaintiff has also named as defendants, but not yet served the Parishes of Lafourche, Washington, and Tangipahoa. An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent. *See*, *e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985); *Hafer v. Melo*, 112 S.Ct. 358, 361 (1991); *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 784-85, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). In this case, Plaintiff has named Lafourche Parish, Washington Parish, and Tangipahoa Parishes as defendants. Due to the redundant nature of the claims, the Collectors respectfully request dismissal of the claims against them in their official capacities.

When as in this case, "the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them." *Marceaux v. Lafayette City-Parish Consol. Govt.*, 921 F.Supp.2d 605, 623 (W.D. La. 2013) (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves") and *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996)).

Accordingly, Plaintiff's claims against the Collectors, individually, in their official capacities should be dismissed.[58]

## B. **The Collectors are Entitled to Qualified Immunity.**

Notwithstanding the foregoing, the Collectors are shielded from liability in the instant matter based on qualified immunity. As such, the burden shifts to Plaintiff to establish that a "reasonable" collector would have known that his conduct violated a clearly established right. Plaintiff has failed to make this showing. As such, the Collectors are entitled to qualified immunity from Plaintiff's claims.

Government officials performing discretionary functions[59] are "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 102 S.Ct. 2727, 2738 (1982). The protection afforded by the defense is an "immunity from suit, not simply immunity from liability". *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). Consequently, the immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to *immunity from suit* and not merely a defense to liability. See *Hunter v. Bryant*,

---

[58] As a result, once served, the Parishes will be entitled to dismissal of the 1983 claims as well. When there is no underlying individual constitutional violation for which the municipal defendant can be held derivatively liable, there can be no liability against the municipality or its employees in their official capacities and thus, Plaintiff will be determined to have failed to state a claim upon which relief can be granted. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528-529 (5th Cir. 1999); *Tejada v. Knee*, 228 F.3d 409, 2000 WL 1056124, *2 (5th Cir. 2000) (unpublished); *Breaux v. Brown*, 2006 WL 3760242, *2 (W.D. La. 2006); *Patin v. Richard*, 2011 WL 9118, *8 (W.D. La. 2011) citing *Ashford v. City of Lafayette*, 2008 WL 5157900, *11 (W.D. La. 2008).

[59] The term "discretionary" has been interpreted to include actions that do not necessarily involve an element of choice. Rather, qualified immunity has been extended to officials who actions may be considered "ministerial" so long as the actions "(1) were 'undertaken pursuant to the performance of his duties' and (2) were 'within the scope of his authority". See *McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995).

112 S.Ct. 534, 536 (1991). Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 106 S.Ct. 1092, 1096 (1986). A defendant is immune if reasonable public officials could differ on the lawfulness of the actions. See *Hassan v. Lubbock Independent School District,* 55 F.3d 1075, 1079 (5th Cir. 1995). Officials are not expected to determine the manner in which the law's gray areas might be clarified or defined. See *Davis v. Scherer*, 104 S.Ct. 3012, 3019-20 (1984).

A bifurcated test is applied when analyzing whether a government official is entitled to qualified immunity: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000).

The first inquiry, whether the plaintiff has alleged a violation of a clearly established constitutional right is a "purely legal question" to be determined by the Court.  *See Siegert v. Gilley*, 111 S.Ct. 1789, 1793 (1991).  In making this determination, the court uses "currently applicable constitutional standards."  *Jacobs,* 228 F.3d at 393. The plaintiff bears the burden of pleading such a violation of clearly established law. *See Mitchell v. Forsyth*, 105 S.Ct. 2806, 2815 (1985); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994).

Next, the court must determine whether an alleged right was established with sufficient particularity that a reasonable official could anticipate his actions would violate that right, *i.e.*, whether the official's conduct was "unreasonable". *Anderson v. Creighton*, 107 S.Ct. 3034, 3039 (1987); *Davis v. Scherer*, 104 S.Ct. 3012, 3019-20 (1984).

Objective reasonableness is a question of law for the court. *Jacobs,* 228 F.3d at 394. The reasonableness of the official's conduct must be assessed in light of the law as it existed at the time of the conduct in question. *Harper v. Harris*, 21 F.3d 597, 601 (5th Cir. 1994). As to a determination of whether a right is "clearly established", the Fifth Circuit has stated:

> [F]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*.

*Sorenson v. Ferric*, 134 F.3d 325, 330 (5th Cir. 1998) (internal citations omitted) (emphasis in original).

Plaintiff has failed to show that there was a violation of a "clearly established constitutional right." This conclusion is supported by the fact that, prior to the *Wayfair* decision, the Louisiana legislature established the Louisiana Sales and Use Tax Commission for Remote Sellers[60], which was intended to serve as the single entity in Louisiana for the collection and administration of state and local sales and use tax on remote sales sourced to Louisiana taxing jurisdictions.[61] Furthermore, following the *Wayfair* decision, the Louisiana legislature included in the definition of "dealers" for sales tax purposes a "safe harbor" virtually identical to that which was found to be constitutional by the Supreme Court in *Wayfair.* Finally, as there are no allegations regarding specific actions of the Collectors and based on the fact that since July 1, 2020, the Remote Sellers Commission has been the singular collector of sales and use tax on remote sales for the State and

---

[60] *See* Act 274.
[61] *See* ¶18 of the Granier Aff., the Drude Aff., and the Butts Aff.; *See also* La. Rev. Stat. §§47:339(A)(2) and §47:340(G).

its parishes,[62] the Collectors submit that their actions are reasonable. Accordingly, the individual Collectors enjoy qualified immunity from Plaintiff's claims herein.

## CONCLUSION

For the foregoing reasons, Plaintiff's claim against the Collectors should be dismissed for lack of jurisdiction or, alternatively, because Plaintiff has failed to state a claim upon which relief may be granted.  Further, the Collectors respectfully request that the Court grant such other and further relief as it deems just and equitable.

**SIGNATURE BLOCKS CONTAINED ON THE FOLLOWING PAGE**

---

[62] *Id.*

RESPECTFULLY SUBMITTED,

 *s/ Patrick M. Amedee*

_____

PATRICK M. AMEDEE (#2448)
CATHERINE MASTERSON (#32575)
JOSEPH Z. LANDRY (#37762)
627 Jackson Street, Suite B (70301)
P.O. Box 1092
Thibodaux, LA  70302-1092
Telephone:      (985) 446-4811
Facsimile:       (985) 446-4846
Email:            pamedee@amedeelaw.com

*Counsel for Amanda Granier, in her official capacity as Sales Tax Collector, Lafourche Parish, Louisiana*


*s/ Ross F. Lagarde*

_____

ROSS F. LAGARDE (#27542)
JEFFREY G. LAGARDE (#31823)
ALEXANDER L.H. REED (#37273)
2250 Gause Blvd. East, Suite 301
Slidell, Louisiana 70461
Telephone:      (985) 605-0527
Facsimile:       (985) 605-0526
Email:            ross@rlagardelaw.com

*Counsel for Jamie Butts, in her official capacity as Sales Tax Auditor, Washington Parish, Louisiana*

*s/ Drew M. Talbot*

_____

DREW M. TALBOT (#31338)
Rainer, Anding & Talbot
8480 Bluebonnet Boulevard, Suite D
Baton Rouge, LA 70810
Telephone:      (225) 766-0200
Facsimile:       (225) 766-0279
Email:            drew@ramlaw.net

*Counsel for Donna Drude, in her official*

*capacity as Sales and Use Tax Administrator,*
*Tangipahoa, Louisiana*

<u>**CERTIFICATE OF SERVICE**</u>

On December 22nd, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Louisiana, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*s/ Patrick M. Amedee*
_____