## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HALSTEAD BEAD, INC., an Arizona corporation,<br><br>*Plaintiff*,<br><br>*v.*<br><br>KEVIN RICHARDS, in his official capacity as Louisiana Secretary of Revenue, *et al.*[1]<br><br>*Defendants*. | Civil Action No. 2:21-cv-02106-JTM-KWR<br><br>**OPPOSITION TO PARISHES' JOINT MOTION TO DISMISS** |

The Court should deny the Joint Motion to Dismiss (Dkt. No. 39) filed by Defendants Granier, Drude, and Butts. Contrary to Defendants' arguments, this Court has jurisdiction. Plaintiff Halstead Bead, Inc. ("Halstead") has been injured by Louisiana's parish-by-parish sales tax system and therefore has standing to challenge it under the Commerce and Due Process Clauses; Plaintiff's claims are ripe and not moot, and are not barred by the Tax Injunction Act (TIA) or any comity or abstention doctrine; and, contrary to Defendants' 12(b)(6) arguments, Plaintiff has pleaded viable constitutional claims.

### STATEMENT OF THE CASE

Louisiana's laws preclude Halstead from selling to would-be customers in the state because the company cannot afford the compliance costs state law would impose if it were to sell more than a *de minimis* amount to Louisiana customers. Once Halstead crosses that *de minimis* threshold—200 transactions or $100,000 in gross sales in Louisiana in a single year, La. Rev. Stat. § 47:301(4)(m)(i)—Halstead must collect local sales and use taxes from Louisiana customers.

---

[1] On February 1, 2022, Kevin Richards succeeded Kimberly Lewis as Louisiana Secretary of Revenue. As successor, Richards is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

Halstead is *willing* to collect those taxes—but the state's process for remitting those taxes imposes an unreasonable barrier to doing so: due to the complexity and arbitrariness of state law, the costs in time and money to comply with those laws effectively prohibit Halstead from selling into Louisiana beyond that *de minimis* threshold. Large companies have tax departments devoted to complying with Louisiana's system. But Halstead's Treasurer cannot reasonably be expected to figure that out alone. Indeed, to comply, Halstead would have to pay many multiples of the value of the goods sold—and multiples of the taxes due—just to figure out, *e.g.*, what sales addresses lie in "Consolidated District A Road District, 3, 5, & 6." *See* Verified Complaint (VC) ¶ 58.

Founded in 1973, Halstead is a family-owned jewelry and craft supplier based in Arizona. *See* VC ¶¶ 1, 5. Married couple Hillary Halstead Scott and Robert ("Brad") Scott are the company's principal officers, serving as President and Treasurer, respectively. *See id*. ¶ 13. Brad manages all of Halstead's finances, including tax registration and compliance. *See id*. ¶ 19.[2]

Originally a mail-order business, Halstead now sells primarily online,[3] and advertises online via pay-per-click models (through Google, Facebook, Instagram, etc.), online buyers' guides for the industry, and online "influencers" nationwide, though none of these contractors are in Louisiana. *See id*. ¶¶ 22, 24-26. Halstead has no physical sales location and it uses no traveling sales people, and all orders are shipped. *See id*. ¶¶ 28-33.

Most of Halstead's sales are wholesale and therefore not subject to sales or use taxes. *See id*. ¶¶ 34-36, 67. Halstead collects copies of business licenses, sales tax licenses, or exemption certificates from wholesale buyers, in case of audit. Retail buyers pay more, but only need to

---

[2] Defendant calls attention to Brad's public writing on issues related to this case, such as congressional testimony. Parish Memorandum at 2 n.1. That is irrelevant here and protected by the First Amendment. *See*, *e.g.*, *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 777 (1978).

[3] Halstead Bead does send catalogs to all 50 states. *See id*. ¶ 23.

provide the shipping address, which the company uses to calculate sales and use taxes. *See id*. ¶¶ 37-39.

Halstead reports, files and remits taxes to 20 states as a remote seller. It does this either on its own or through TaxValet, a service provider to small businesses to aid in tax collection. *See id*. ¶¶ 40, 41, and 43. It can look up some tax rates, for a monthly fee, via Zip-Tax.com, a tax-rate calculation website that uses ZIP Code and delivery address. *See id*. ¶ 42. Halstead then remits sales and use taxes monthly, either via Tax Valet or directly. *See id*. ¶ 43.

Halstead is willing to collect and remit taxes in Louisiana. *See id*. ¶¶ 71-72. But Louisiana's parish-by-parish tax-collection system is so extremely complicated that it imposes an insuperable barrier to doing so. Louisiana Constitution Article VII, Section 3(B)(1) and La. Rev. Stat. § 47:337.14 mandate sales and use tax registration and reporting for local sales and use tax on a parish-by-parish basis. Parishes not only collect sales and use taxes on their own; they also have their own exclusions and exemptions adopted by local ordinance. *See* La. Rev. Stat. § 47:337.4(B)(6). Also, some local sales and use tax exemptions are specified in other Louisiana statutes—with some applicable to only one parish. *See e.g.*, La. Rev. Stat. §§ 47:337.10 (listing 16 categories of exemptions, sometimes limited to a single parish); 47:337.11 *et seq*. A sale of a few dollars can thus transform Halstead from not having to file at all to needing to understand and comply with *thousands of pages* of regulations, and to report to *sixty-three* out of sixty-four parishes, *plus* the state.

Worse, while *parishes* collect sales and use taxes, tax rates may be set by *other* local taxing authorities *within* a parish, such as cities, towns, villages, and school or fire districts. This means local tax rates may vary *within* a given parish. *See* VC ¶ 51. The parish-by-parish approach thus imposes hundreds of hours of annual compliance costs. *See, e.g.*, Exhibit B to VC (collecting

3

examples, excluding Washington Parish's, which are not online). Further, the rules and regulations change with unpredictable frequency, increasing the level of attention due to each and materially increasing the burden of compliance.

What's more, it is not obvious which jurisdictions have a claim to a sale at any given address. *See* VC ¶ 57. A customer's number, street, city, and ZIP code—the most common way buyers input a shipping address—is often *insufficient* to establish which Louisiana municipalities can tax that sale. Sometimes an address's "city" is simply the nearest post office, but the location is itself it in unincorporated parish territory. Sometimes a city is in more than one parish.[4] And identifying the town and parish does not necessarily establish which other local taxing bodies have jurisdiction over the address, such as fire districts or economic improvement districts. *See id.* ¶¶ 57, 61.

Getting things wrong can have severe consequences: a company's officers, managers, or directors can be held *personally* liable for any misapplied sales taxes or for failure to register. *See id.* ¶ 62.

For these reasons Halstead takes pains to stay below the *de minimis* sales threshold. *See id.* ¶ 46. For example, on December 6, 2021, Halstead stopped sales to avoid reaching the threshold. *See id.* at ¶ 48; Exhibit A, Supplemental Declaration of Robert "Brad" Scott (attached). But for this burdensome system, Halstead would not limit its sales to Louisiana to stay below that threshold. *See* VC ¶ 47.

Halstead therefore filed this action seeking declaratory and injunctive relief from Louisiana's system, alleging claims under the Commerce Clause, *see id.* ¶¶ 73-92, and the Due

---

[4] For example, a "New Orleans" address might mean Orleans Parish or Jefferson Parish, which is part of the metropolitan area.

Process Clause of the Fourteenth Amendment, *see id.* ¶¶ 93-108.

In response, the Parish Defendants—the tax officials sued in their official capacity along with the parishes of Lafourche, Tangipahoa, and Washington—filed a joint motion to dismiss.[5] The Parishes seek dismissal under Rules 12(b)(1) and 12(b)(6). None of the Parishes' arguments warrant dismissal of Halstead's claims.

## LEGAL STANDARDS

Dismissal of a claim invoking federal question jurisdiction under Rule 12(b)(1) "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief," *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), and only if the complaint "is not colorable'" or is "wholly insubstantial and frivolous." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006) (citation omitted).

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and dismissal is improper "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation and quotation marks omitted). In reviewing the complaint, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Edionwe v. Bailey*, 860 F.3d 287, 291, 295 (5th Cir. 2017) (citation and quotation marks omitted).[6]

---

[5] Defendant Louisiana Secretary of Revenue Richards also filed dismissal motion to which Halstead Bead is responding separately.

[6] The Parishes filed several affidavits along with their Motion to Dismiss, thus offering their own evidence on the burdens of the Louisiana sales and use tax collection system. That alone indicates a dispute of material fact and law, which proves that dismissal is inappropriate here. In deciding this motion, the Court should "rely on the verified complaint for an account of the facts" because that is what the Court is testing. *Barry v. Freshour*, 905 F.3d 912, 913 n.1 (5th Cir. 2018).

**ARGUMENT**

**I.     This Court Has Jurisdiction to hear Halstead's Challenge.**

The Parishes argue that Halstead lacks standing, that its claims are unripe or moot, and that its claims are barred by the TIA, the doctrine of comity, or the *Burford* abstention doctrine. None of these arguments are availing.

**a.   Halstead Has Standing.**

**i.   There is Injury in Fact.**

Halstead has standing to pursue its claims because Louisiana's filing and registration requirements injure Halstead by imposing insurmountable burdens on Halstead's business, which have caused it to stop selling to Louisiana customers.

Being forced to forgo business opportunities is a "classic and paradigmatic form of injury in fact." *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 210–11 (4th Cir. 2020) (citations omitted). *See also Craig v. Boren*, 429 U.S. 190, 194 (1976) (loss of business opportunities due to government regulation sufficient injury for standing); *Doran v. Salem Inn, Inc*., 422 U.S. 922, 932 (1975) (same); *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2010) (finding standing when plaintiff increased spending to comply with law); *Jones v. Gale*, 470 F.3d 1261, 1267 (8th Cir. 2006) (finding financial loss injury-in-fact).

As discussed above, Halstead generally sells and ships goods to customers in all states but stopped accepting orders from Louisiana customers on December 6, 2021. *See* VC ¶¶ 22-23; Exhibit A. Halstead was and is unwilling to cross the tax threshold because of the costs it would impose, which would far exceed the value of the additional sales. *See id.* ¶¶ 45-48, 71. Louisiana's filing and registration requirements were the reason it stopped selling to Louisiana customers in 2021 and will do so again if it approaches the 200-transaction threshold in 2022. *See id*. Thus, these requirements have caused Halstead legal injury.

Also, a plaintiff may bring a pre-enforcement challenge if it "alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation omitted). Courts in this Circuit have applied this rule to cases involving business regulations. *See, e.g.*, *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 267-68 (5th Cir. 2015) (holding that it "is unnecessary to wait for the [Regulation] to be applied in order to determine its legality") (quoting *Nat'l Envtl. Dev. Ass'n's Clean Air Project v. Envtl. Prot. Agency,* 752 F.3d 999, 1008 (D.C.Cir.2014)) (bracket in *Contender Farms*); *Nat'l Press Photographers Ass'n v. McCraw*, 504 F. Supp.3d 568, 579 (W.D. Tex. 2020) (finding that plaintiff had standing where he alleged that he stopped photography to avoid "risk[ing] liability for criminal and civil penalties").

Halstead's injury is not "self-inflicted," as Defendants say, and it is not true that Defendants "have nothing to do with the business decisions of Plaintiff." Parishes' Mem. at 19. To the contrary, they enforce the filing and reporting requirements Halstead challenges and therefore are responsible for the consequences Halstead would face if it did not decline business opportunities in Louisiana. *See* VC ¶¶ 6-12.

Nor is Halstead's injury "speculative." Parishes' Mem. at 17-18. Halstead has *already* been injured by being compelled to stop selling to Louisiana customers to avoid the burdens of the laws it challenges. *Cf. Lac Du Blambeau of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 499 (7th Cir. 2005) (finding standing where a state might reject a permit to operate casino, though there was application pending, because the constraint caused current financial harm in deterring investors). The case Defendants cite is inapposite. *DaimlerChrysler v. Cuno*, 547 U.S. 332, 342-43 (2006), involved a taxpayer whose only alleged injury was the speculation that, but for the tax

credit being challenged, his and all taxpayers' taxes would be lower. Here, Halstead's injury is not contingent on "how legislators respond to a reduction in revenue, if that is the consequence." *Id.* at 344.

Thus, because Louisiana's filing and reporting requirements currently injure Halstead, and an injunction against those requirements would fully redress that injury, Halstead has standing.

### ii.  Halstead's Claims Are Ripe.

There is no merit in Defendants' arguments that Halstead's claims are unripe. As discussed, *supra*, a challenger need not intentionally violate a law in order to have standing to challenge it, particularly where the officers of the company are *personally* liable. *See* La. Rev. Stat. § 47:1561.1(A). *See Steffel v. Thompson*, 415 U.S. 452, 462 (1974) (recognizing that plaintiff may seek pre-enforcement injunction when placed "between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding").

"The key considerations for ripeness are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008) (cleaned up, citation omitted). "A case is generally ripe if any remaining questions are purely legal ones," as long as "the plaintiff [can] show some hardship" that would result if the Court declined to hear the case. *Id.*

Halstead's claims are ripe because they present purely legal questions: whether Louisiana's filing and reporting requirements violate the Commerce and Due Process Clauses. And declining to hear this case would cause Halstead hardship. This prong is satisfied by "the harm of being 'force[d] to modify [one's] behavior in order to avoid future adverse consequences.'" *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) (citation omitted, brackets in *Texas*). That is exactly Halstead's situation here: if the Court were to withhold consideration of its constitutional

claims, Halstead would have to carefully monitor all transactions to Louisiana and would either have to continue to block sales to Louisiana customers or bear the compliance costs it alleges are unconstitutional.

Halstead's claims do not depend, as Defendants assert, on "future uncertainties or future intervening, contingent events." Parishes' Mem. at 21. There is no doubt that Defendants would enforce those requirements if Halstead crossed the sales threshold. *Cf. Cooper v. McBeath*, 11 F.3d 547, 552 n.7 (5th Cir. 1994) (in Commerce Clause challenge, "promise of threatened enforcement" if plaintiffs violated prohibition was "sufficient to thwart any assertion that the dispute lacks ripeness"). And it is irrelevant that Halstead has not yet crossed the threshold. *See, e.g.*, *Greer's Ranch Café v. Guzman*, 540 F. Supp.3d 638, 646 (N.D. Tex. 2021) (finding that business had standing to challenge rules for federal grant for which it had not applied because it had shown it was "able and ready" and had "actual desire" to do so if the challenge succeeded); *Community Visual Commc'ns v. City of San Antonio*, 148 F. Supp.2d 764, 768 (W.D. Tex. 2000) (claims were not moot "just because plaintiff has decided not to continue to operate as a [regulated business] until the controversy is resolved"). In any event, Halstead's decision to withhold sales in anticipation of future regulatory costs is sufficient injury for ripeness purposes. *See, e.g.*, *Thomas More L. Ctr. v. Obama*, 720 F. Supp.2d 882, 889 (E.D. Mich. 2010) ("Plaintiffs' decisions to forego certain spending today" in anticipation of future regulatory costs were "injuries fairly traceable" to the statute they challenged).

Defendants say it is uncertain that reaching the 200-transaction threshold would cause Halstead to incur the compliance costs it has identified because, Defendants assert, "registration with the Remote Sellers Commission may remove most of [those] burdens." Parishes' Mem. at 21. But the Remote Sellers Commission does not negate Halstead's alleged injury because the

Commission's website is simply a bare-bones rehash of the Parishes' paper forms—the burdens of compliance dozens with of local tax definitions, unclear taxing district boundaries, and compliance costs still exist.

### iii.   This Case Is Not Moot.

Defendants provide no support for their assertion that Halstead's claims are moot. *See* Parishes' Mem. at 21-23. "A controversy is mooted when there are no longer adverse parties with sufficient legal interests to maintain the litigation" and the case thus "presents no Article III case or controversy." *Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999).

Here, Defendants have not shown that this case is moot, because they have not alleged that anything has occurred to eliminate the controversy between the parties. *See Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 665, 661 (5th Cir. 2006) ("Generally, any set of circumstances that eliminates actual controversy *after the commencement of the lawsuit* renders that action moot.") (emphasis added). Instead, Defendants make an argument about the *merits*, asserting that Halstead would not actually incur the "majority" of burdens it has identified if it were to reach the 200-transaction threshold. *See* Parishes' Mem. at 22. That argument is false, but it also has nothing to do with mootness.[7]

### b.   The Tax Injunction Act is No Bar to this Challenge.

The TIA does not bar Halstead's claims. In the Parishes' argument on this issue, only one paragraph attempts to apply the TIA's language to the Verified Complaint. *See* Parish Mem. at 25. The rest consists of policy arguments on why the TIA is a good idea, *id*. at 23-24, or uncited,

---

[7] True, Louisiana's *de minimis* threshold resets every year—but that only shows that this challenge satisfies "the established exception to mootness for disputes capable of repetition, yet evading review," because "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007).

conclusory language, *id*. at 26. But this case (1) does not seek to enjoin tax collection, but instead challenges the *regulatory burdens* of Louisiana's registration and reporting system; and (2) is one where the state provides no plain, speedy, and efficient remedy.

### i. This is Not a Challenge to "The Assessment, Levy or Collection of Any Tax."

The Parishes assume that this case is about the collection of taxes. Not so. As Halstead has repeatedly averred, the controversy is about whether the state can force out-of-state sellers to incur the costs of complying with filing and reporting requirements of such extreme complexity and arbitrariness as to amount to an effective prohibition on trade. Halstead is *willing* to remit the taxes due to whatever locality state law requires, but it *cannot* register with each individual parish or understand thousands of pages of labyrinthine tax rules whose applicability may depend on, *e.g.*, whether an address is north of a canal or south of it. It is the regulatory burdens, not the taxes, that are at issue here. Even Defendant Richards recognizes that "Plaintiff's Complaint is not necessarily rooted in the underlying taxes, but the regulatory framework for those provisions." Def. Memorandum in Support of Mot. to Dismiss Pursuant to R. 12(b)(6) at 6 (Dkt. No. 47-1) ("Sec'y Memorandum"). That should resolve the TIA question entirely.

The TIA does not apply because this case does not challenge acts of tax "assessment, levy, or collection" but rather the regulatory burdens of registration in each parish, including payment of registration fees, duplicative submission of monthly tax returns, compliance with a fragmented system of definitions and exemptions that vary by parish, and a number of local jurisdictions that are virtually impossible to identify and track. Halstead would remit the state and local taxes in Louisiana but for the registration and compliance complications of the parish-by-parish system.

The Supreme Court has held that the TIA and the Anti-Injunction Act use the same language and the Supreme Court instructs that they be applied in the same way. *See Direct*

*Marketing Ass'n v. Brohl*, 575 U.S. 1, 8 (2015). And it held just last term that registration and reporting obligations are not automatically subject to the Anti-Injunction Act's bar on federal court jurisdiction. *See CIC Servs. v. IRS*, 141 S. Ct. 1582, 1589 (2021). It "d[oes] not matter that the reporting requirements would 'facilitate collection of taxes.'" *Id*. (quoting *Direct Marketing.*, 575 U.S. at 12).

Since information gathering is a step before "assessment," it is *not* subject to the TIA's bar. Using the Federal Tax Code as a guide, *Direct Marketing* noted that "the Federal Tax Code has long treated information gathering as a phase of tax administration procedure that occurs before assessment, levy, or collection." *Direct Marketing*, 575 U.S. at 8. Assessment is "the official recording of a taxpayer's liability, which occurs after information relevant to the calculation of that liability is reported to the taxing authority." *Id*. at 9. The TIA therefore does not apply to challenges regarding paperwork associated with figuring out whether taxes might be due—such as registration and reporting requirements for local taxing districts. *See Direct Marketing*, 575 U.S. at 11.).[8]

Halstead has averred it is willing to pay the state and local sales and use taxes due. *See* VC ¶¶ 40, 71. Indeed, the majority of Halstead's sales are wholesale and entail no requirement to pay state or parish taxes—but nonetheless would trigger the registration and reporting requirements. *See* La. Rev. Stat. § 47:306(A)(7); VC ¶¶ 35, 68, 89, 103, and 106. Halstead challenges those registration and reporting requirements, *not* the collection or rates of any tax.

### ii.   There is No "Plain, Speedy, and Efficient" State Remedy.

The TIA also does not apply for a second, independent reason: the state provides no "plain,

---

[8] Administrative registration fees are not "taxes" for purposes of the TIA. *See*, *e.g.*, *McDonald v. Longley*, 4 F.4th 229, 242 (5th Cir. 2021). And "[w]hether a charge is a fee or a tax is a question of federal law." *Id*.

speedy, and efficient remedy."

Under state law, an out-of-state business cannot obtain preemptive relief in a challenge to the tax-related regulatory requirements. Instead, it must first pay (or remit) taxes, then sue for a refund. *See* La. Const. art. VII, § 3(A) ("The legislature shall prohibit the issuance of process to restrain the collection of any tax."); La. Rev. Stat. § 47:1575 ("No court of this state shall issue any process whatsoever to restrain the collection of any tax, penalty, interest, or other charge imposed in this Sub-title."); La. Rev. Stat. § 47:1576(A)(1)(a) ("[A]ny taxpayer protesting… the enforcement of any provision of the tax laws… shall remit to the Department of Revenue the amount due and at that time shall give notice of intention to either file suit or file a petition with the Board of Tax Appeals for purposes of recovery of such tax."). Louisiana state courts have therefore held that they cannot offer the prospective relief Halstead needs. Only suits for refunds can go forward, not preemptory challenges to the registration and reporting burdens. *See, e.g.*, *Jackson v. City of New Orleans*, 144 So.3d 876, 895 (La. 2014); *Austin v. Town of Kinder*, 36 So.2d 48, 50 (La. Ct. App. 1948).[9]

State law says Halstead may go to the State Board of Tax Appeals "for 'all matters related to state or local taxes or fees.'" *United Parcel Serv. of Am., Inc. v. Robinson*, 2021 WL 4296492, at *2 (La. Bd. Tax. App. July 14, 2021) ("*UPS*") (quoting La. Rev. Stat. § 47:1407(3)).

---

[9] Injunctive and declaratory relief are generally read conterminously in the tax context. *See Cohen v. United States*, 650 F.3d 717, 730–31 (D.C. Cir. 2011) (en banc) (discussing the combined use of prospective relief under the TIA in *Hibbs*). The Parishes recognize this. *See* Parishes' Memorandum at 23 (citing *Cal. v. Grace Brethren Church*, 457 U.S. 393 (1982)). Even if the state courts issue only a declaration, it still will be incomplete relief. Declaratory relief alone is useless without an order to stop its enforcement. Demanding first a suit for declaratory relief and then *another* suit for injunctive relief based on the declaration, which still would be barred by La. Rev. Stat. § 47:1575, is not a "plain, speedy, and efficient remedy." It is a two-lawsuit process in which the second step is always barred by state law. As then-Judge Amy Coney Barrett noted, "[e]fficiency is no good to the taxpayers if it means that they cannot bring their… claim in state court." *A.F. Moore & Assocs., Inc. v. Pappas*, 948 F.3d 889, 895 (7th Cir. 2020).

That might sound helpful, but "[a] taxpayer does not have the unrestrained right to petition the Board." *Id.* at *3 (relying on La. Const. art. VII, § 3(A) and La. Rev. Stat. § 47:1575). The entirety of the lone way into a state forum, Louisiana Revised Statute § 47:1576, is premised on suit for *refunds*. Consequently, the Board has held that it lacks jurisdiction to hear a challenge until an assessment is issued. *Id.* at *4. It has also held that it lacks power to hear a pre-assessment declaratory judgment action because its jurisdiction is limited to taxpayers asking for a *refund* of taxes already assessed. *See id.*; *Bridges v. Smith*, 832 So. 2d 307, 313 (La. Ct. App. 1 Cir. 2002) ("The taxpayers did not have a right to be heard by the BTA in this case because no formal assessment was made. The right of appeal to the BTA is a remedy available only to the assessed taxpayer.").

Because Halstead does not challenge the amount or type of any taxes, but rather the Byzantine system with which it must comply if it reaches the threshold, a suit for refund is unavailable here. In fact, most of Halstead's sales are wholesale, *see* VC ¶¶ 35, 68, 89, 103, 106, and Louisiana and its parishes impose no tax at all for wholesale transactions, so there is no refund to seek. La. Rev. Stat. § 47:306(A)(7); VC ¶ 70. But even if Halstead had *only* engaged in wholesale sales to Louisiana customers, and thus owed *no* taxes to either the state or the parishes, the state would *still* require it to comply with the registration and reporting rules challenged here. Therefore, there is no state procedure to remedy the injury of which Halstead complains.

Contrary to the Parishes' arguments, state courts are unavailable for Halstead. La. Rev. Stat. § 47:1565 is about appealing an assessment or collection of the tax; it does not grant state courts jurisdiction to hear a challenge before taxes are assessed. Nor does Section 47:337.51 provide state courts with power to hear a challenge to the parish-by-parish system. Indeed, the Defendants acknowledge that the state court jurisdiction is only for claims that a tax "has been

invalidly assessed or collected," Parishes' Memorandum at 25, *not* for challenging the way in which a business registers and remits the taxes.

All of the other cases cited as authority by the Parishes are inapposite because they are about the sweeping importance of the TIA, not the statute's two-factor test. *See, e.g.*, *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 432 (2010) ("[W]e need not decide whether the TIA would itself block the suit."); *Arkansas v. Farm Credit Services of Cent. Ark.*, 520 U.S. 821, 828-32 (1997) (deciding whether federal instrumentalities fall under the TIA when they sue the United States); *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 507 (1981) (concerning taxes already assessed); *Diversified Ingredients v. Testa*, 846 F.3d 994, 995 (8th Cir. 2017) (same); *United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323, 324 (5th Cir. 1979) (involving duplicative refund suits for taxes paid); *Smith v. Travis Cty. Educ. Dist.*, 968 F.2d 453, 455 (5th Cir. 1992) (involving challenge to tax calculations already underway in state court); *Grace Brethren Church*, 457 U.S. at 398 (deciding whether religious organizations could stop the collection of state unemployment taxes). Further, the Court has emphasized that the TIA should not be invoked sweepingly "to prevent federal-court interference with all aspects of state tax administration." *Hibbs v. Winn*, 542 U.S. 88, 105 (2004); *see also Direct Marketing*, 575 U.S. at 12 n.1 (cautioning against overreading *Grace Brethren Church*).

In sum, both the Board of Tax Appeals and state courts agree that state law allows only suits for refunds. Halstead wants to collect and remit Louisiana local taxes, but the compliance system is so burdensome it cannot do so—and therefore will never be in a position to seek a refund. Thus, there is no "plain, speedy, and efficient remedy," and the TIA does not bar Halstead's claims.

### c.  Traditional Notions of Comity Do Not Apply.

The tax-related comity doctrine likewise does not apply here. Historically, comity has only barred federal relief when a plaintiff has an adequate state law remedy. *See Fair Assessment in*

*Real Estate Ass'n v. McNary*, 454 U.S. 100, 108 (1981); *Mathews v. Rodgers*, 284 U.S. 521, 526 (1932); *Great Lakes Dredge & Dock Co. v. Hoffman*, 319 U.S. 293, 297 (1943). Comity does not make states immune from all tax-related suits in federal courts; it only makes them immune when state courts could provide remedies for violations of federal rights that are "plain, adequate, and complete." *McNary*, 454 U.S. at 116. As shown above, Louisiana does *not* provide such a remedy for Halstead.

The Parishes mistakenly read *McNary* as saying that comity bars a greater range of suits than the TIA does. As the Supreme Court held in 2004, comity is applied narrowly to "preclude original federal-court jurisdiction *only* when plaintiffs have sought district-court aid in order to arrest or countermand state tax *collection*." *Hibbs*, 542 U.S. at 107 n.9 (emphasis added). Nor is *McNary* to the contrary. *McNary*, 454 U.S. at 116 (limiting comity's reach to the similar length as the TIA: namely only where state "remedies are plain, adequate, and complete"); *id*. at 119-20 (Brennan, J., concurring) ("The application of the comity principle has thus been limited to a relatively narrow class of cases"). The action in this case would *not* bar any state tax collection. Halstead is happy to pay whatever tax it owes Louisiana. The company simply challenges Louisiana's burdensome registration and compliance requirements.

This case is nothing like *Levin*, *supra*, on which the Parishes rely. *Levin* involved an act of interstate discrimination in which the Ohio legislature gave certain Ohio energy companies a tax exemption that other types of energy companies did not receive. *See Levin*, 560 U.S. at 418. Here, Halstead is not trying to invalidate anyone's tax exemptions. It simply seeks to invalidate burdensome regulatory requirements on retailers selling online in Louisiana. Therefore, this Court should apply the traditional comity analysis and hear Halstead's claims.

Even if *Levin* were relevant, the three factors it employed yield a different outcome here.

*Levin* declined jurisdiction because (1) that case did not involve any fundamental right that would warrant heightened scrutiny, (2) the respondents were asking the Court to improve their competitive position, and (3) state courts were in a better position to correct any violation. *See Levin*, 560 U.S. at 428-31. But here, factors two and three weigh in *favor* of jurisdiction. Halstead is not asking this Court to improve its competitive advantage—it is asking the Court to invalidate Louisiana's overly burdensome requirements for *all* online retailers. And state courts are not in a better position to correct this violation because they cannot provide Halstead a remedy.

### d.   *Burford* Abstention is Improper.

This Court should not abstain from hearing Halstead's federal constitutional claims under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). *Burford* only allows courts to abstain from hearing claims for equitable or discretionary relief: it does not allow courts to abstain from hearing claims for damages. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996); *Webb v. B.C. Rogers Poultry Inc.*, 174 F.3d 697, 702 (5th Cir. 1999). Halstead seeks damages as relief for its constitutional claims and to that extent its claims are not even potentially subject to *Burford* abstention.

Further, *Burford* abstention would not be warranted even if Halstead only sought equitable relief. Applying *Burford* requires balancing "the strong federal interest" in having federal courts decide federal questions against the state's interests in "maintaining uniformity in the treatment of an essentially local problem" and "retaining local control over difficult questions of state law." *Quackenbush*, 517 U.S. at 728 (internal marks and citations omitted). This balancing "only rarely favors abstention" because *Burford* abstention is "an *extraordinary and narrow* exception to the duty of the District Court to adjudicate a controversy properly before it." *Id.* (emphasis added, internal marks and citations omitted).

Indeed, "federal courts have a virtually unflagging obligation to exercise the jurisdiction

given them," and thus "*Burford* abstention is disfavored." *Aransas Project v. Shaw*, 775 F.3d 641, 649, 653 (5th Cir. 2014) (cleaned up).The Fifth Circuit considers five factors to determine whether *Burford* abstention is warranted: "(1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review." *Aransas Project*, 775 F.3d at 649 (citation omitted). These factors disfavor abstention here.

*First*, Halstead has raised only federal constitutional claims. *Cf. New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*") (finding abstention improper where a case did "not involve a state-law claim, nor even an assertion that the federal claims are 'in any way entangled in a skein of state law that must be untangled before the federal case can proceed'") (citation omitted); *Leclerc*, 270 F. Supp.2d at 795 (rejecting *Burford* abstention in a case with no "difficult questions of state law," where plaintiffs' claims were "based solely on federal law" and "[t]he only issue [was] whether [a state] rule [was] in conflict with various federal laws.").

*Second*, this case does not require inquiry into "unsettled issues of state law or into local facts." *Aransas Project*, 775 F.3d at 649. The filing and reporting requirements that Halstead challenges are expressly specified by state and local law. Further, even if the Court did have to address some questions of state law to resolve Halstead's federal claims, that would not on its own suffice to justify abstention. Federal courts "frequently decide unsettled questions of state law," and if a "question of state law is especially important or difficult to resolve, [they] can ask a state court to decide that issue while still retaining federal jurisdiction over the case as a whole." *Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 315 (5th Cir. 2021). This factor asks if the

Court's "exercise of jurisdiction would involve [it] in an open-ended fairness inquiry into predominantly local matters, or allow the court to second guess the policy decisions of state regulators." *Id.* at 316 (citation and quotation marks omitted). But such is not the case here.

Also, Halstead's claims do not depend on "local facts." The claims in *Burford* involved a challenge to a Texas Railroad Commission order granting a drilling permit, which was part of a "general regulatory system devised for the conservation of oil and gas in Texas"—"as thorny a problem as has challenged the ingenuity and wisdom of legislatures." *Burford*, 319 U.S. at 318 (citation and quotation marks omitted). In operating that system, the state had to consider various complicated local concerns about geology and the gas industry. *See id.* at 323-24. Thus *Burford* concluded that allowing federal "double" review of the state's regulatory decisions could cause "[d]elay, misunderstanding of local law, and needless federal conflict with the State policy." *Id.* at 327. No such difficulties are present here. Halstead does not ask this Court to make a decision that is ordinarily made by a state court as part of a state's ongoing development of a regulatory scheme in which the competing interests of various players, and competing state policy interests, must be balanced. Rather, Halstead only asks whether the requirements the state has enacted violate the federal Constitution.

As for the *third* factor, it is true that the state has a strong interest in collecting taxes, but "there is also a strong federal interest" present: avoiding unconstitutional burdens on interstate commerce. *Cf. Aransas Project*, 775 F.3d at 651 (holding that the state's "strong interest" in water management was offset by "strong" federal interest in protecting interstate endangered species).

The *fourth* factor—the "state's need for a coherent policy," *id.* at 649—weighs against abstention. This factor is concerned with "protecting complex state administrative processes from undue federal interference," but "it does not require abstention whenever there exists such a

process or even in all cases where there is potential conflict." *Id.* at 651 (quoting *NOPSI*, 491 U.S. at 363). "[T]here is no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." *NOPSI*, 491 U.S. at 363 (marks removed, citation omitted). Abstention may be proper where federal court involvement would disrupt the "delicate balancing" of the interests of "stakeholder[s]" in a regulatory scheme that "interconnects its users." *Aransas Project*, 775 F.3d at 651. This case involves no such scheme—it instead concerns the regulatory burdens out-of-state citizens face in complying with Louisiana law.

Finally, the *fifth* factor—whether there is "a special state forum for judicial review," *id.* at 649—disfavors abstention. As set forth in Section I(b), *supra*, Louisiana does not provide Halstead with *any* forum for adequate, timely review of its constitutional claims. And even if Halstead could pursue its claims in state court, that would not be a "special" forum. In *Burford*, judicial review of questions involving the Texas regulatory scheme in question occurred in a special forum—a single state court—to avoid the "intolerable confusion" that would result from various courts reaching "conflicting conclusions." *Burford*, 319 U.S. at 327; *see also, e.g., Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 316 (5th Cir. 1993) (finding that a "special state forum" existed where state gave primary jurisdiction to the Louisiana Public Service Commission, with appeals centralized in the state capital, "similar to the centralized system of review in *Burford*"). But here, Louisiana has no forum at all, let alone an exclusive "special" forum for judicial review of tax matters. *Cf. Grace Ranch,* 989 F.3d at 318 (finding "no special forum" where suits could be "brought, like most lawsuits, anywhere in the State").

## II.   Halstead Brought Meritorious Claims and There are Material Facts in Controversy and Law to Apply.

The Commerce Clause grants Congress power to "regulate Commerce . . . among the several states." U.S. Const. art. I, § 8, cl. 3. This Clause sometimes "imposes limitations on the

[s]tates absent congressional action" when they impede "the free flow of interstate commerce." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2089-90 (2018) (internal citation and quotation marks omitted). But taxes on interstate commerce may survive a "challenge when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977).

*Wayfair* upheld South Dakota's taxing of eCommerce, but did so in part because the state had enacted important guardrails that limited the burdens it would impose on interstate commerce:

> First, the Act applies a safe harbor to those who transact only limited business in South Dakota. Second, the Act ensures that no obligation to remit the sales tax may be applied retroactively…. Third, South Dakota is one of more than 20 States that have adopted the Streamlined Sales and Use Tax Agreement. This system standardizes taxes to reduce administrative and compliance costs: It requires a single, state level tax administration, uniform definitions of products and services, simplified tax rate structures, and other uniform rules. It also provides sellers access to sales tax administration software paid for by the State. Sellers who choose to use such software are immune from audit liability.

*Wayfair*, 138 S. Ct. at 2099-2100. Had South Dakota not met all three conditions, the Court would likely not have reached the same conclusion.[10]

   **a. Of the Three Hallmarks Identified by the Supreme Court in *Wayfair*, Louisiana Lacks Two of Them.**

      **i. Louisiana's Safe Harbor Falls Short of Preventing an Undue Burden on Interstate Commerce**

*Wayfair* identified the "safe harbor" as one of the "features that appear designed to prevent

---

[10] The Parish Defendants call *Wayfair*'s factors "dicta." They are not, because the hallmarks were key in deciding South Dakota's tax system did not unduly burden interstate commerce. Even if it was *dicta*, lower courts "are bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the *dicta* is recent and not enfeebled by later statements." *Peterson v. Martinez*, 707 F.3d 1197, 1210 (10th Cir. 2013); *see also Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) ("Even assuming it is dictum, however, we give serious consideration to this recent and detailed discussion of the law by a majority of the Supreme Court.").

… undue burdens upon interstate commerce." *Wayfair*, 138 S. Ct. at 2099. Louisiana's safe harbor of up to 200 transactions or $100,000 in gross sales, Louisiana Revised Statute § 47:301(4)(m)(i), is inadequate as a protection against an undue burden upon interstate commerce for two reasons.

First, if a seller, such as Halstead, engages in extensive wholesale transactions, which are exempt from tax under Louisiana law, the seller will nonetheless trigger compliance obligations and reporting burdens once it reaches 200 transactions of *any* kind—taxable or not. Plaintiff's compliance costs in reporting to all the various jurisdictions will necessarily exceed the amount of sales tax collected—the amount of tax due in many parishes could even be zero—and exceed even the company's profits on sales statewide. *See* VC ¶ 45.

Second, while $100,000 in sales or 200 transactions may be a sufficient safe harbor for sparsely populated South Dakota, it is much easier for a small seller to trigger that threshold in Louisiana where the population is five times larger. Several states have recognized this and adopted higher *de minimis* thresholds that are more likely to be genuine safe harbors. *See*, *e.g.*, Cal. Rev. & Tax Code § 6203(c)(4)(A) ($500,000 and no transaction trigger); N.Y. Tax Law § 1134(a)(1)(i) ($500,000 *and* 100 transactions); Texas Admin. Code § 3.286(b)(2)(B)(i) ($500,000 and no transaction trigger); Ala. Admin. Code r. 810-6-2-.90.03(1)(a) ($250,000 and no transaction trigger); Miss. Code § 27-67-3(j) ($250,000 and no transaction trigger) ($250,000 and no transaction trigger). Not so Louisiana.

### ii.  Unlike South Dakota, Louisiana is Not a Member of the Streamlined Sales and Use Tax Agreement

One factor *Wayfair* recognized as mitigating compliance burdens on out-of-state sellers in South Dakota was the state's adherence to the Streamlined Sales and Use Tax Agreement ("SSUTA"), which "standardizes taxes to reduce administrative and compliance costs." *Wayfair*, 138 S. Ct. at 2100. Louisiana is not a member of SSUTA, having never applied for full or associate

membership. *See* Streamlined Sales Tax Governing Board, "State Information."[11] Louisiana and its local governments do not provide any of the standardization or uniformity guaranteed by SSUTA: they do not provide a database of local rate and boundary changes; do not participate in a national registration system; do not accept uniform tax returns and taxability certifications; do not produce or provide a taxability matrix—and so forth.

In explaining how SSUTA reduces compliance burdens, *Wayfair* specifically listed SSUTA's requirement of a single state-level tax administration per state, uniform definitions of products and services, simplified tax rate structures, and other uniform rules, as well as providing free sales tax administration software and immunizing sellers who use such software from audit liability. *See Wayfair*, 138 S. Ct. at 2100. Louisiana does not provide *any* of those things.

Thus, out-of-state sellers must navigate a vast network entailing various taxing jurisdictions within each parish, disparate exclusions and exemptions, independent administration and auditing, and a vast array of interparish substantive and procedural differences.[12] Louisiana exemplifies the opposite of the "simplified tax rate structures" emphasized in *Wayfair*.

Local tax rules make the matter even worse. Under Louisiana law, each taxing jurisdiction may create its own definitions for tax purposes, which means there are no uniform rules throughout the state. Lafourche Parish has its own sales and use tax regulations. Ex. B at 330 (showing Code of Ordinances of Lafourche Parish, Louisiana §§ 38-260 *et seq*.). It has independent auditing

---

[11] https://www.streamlinedsalestax.org/Shared-Pages/State-Detail.

[12] Disparate tax treatment of the same company between parishes can be seen in Louisiana's case law. For example, St. Mary Parish once assessed a use tax against a local marine barge company that bought materials and equipment to repair its barge even though the Parish where those materials were bought exempted them. *See Coastal Drilling Co. v. Dufrene*, 198 So.3d 108, 111 (La. 2016). *Coastal Drilling* exemplifies how local tax laws' diverging definitions about the same product occur because Louisiana neither adheres to the SSUTA nor has uniformity in its tax administration between state and local governments.

powers. Ex. B at 347 (Code of Ordinances of Lafourche Parish, Louisiana § 38-335). It has its own

tax penalties. Ex. B at 349 (Code of Ordinances of Lafourche Parish, Louisiana § 38-337). It has

its own enforcement provisions. Ex. B at 356 (Code of Ordinances of Lafourche Parish, Louisiana

§ 38-340(g)). It has its own tax definitions. Ex. B at 343 (Code of Ordinances of Lafourche Parish,

Louisiana § 38-331). Tangipahoa Parish, meanwhile, has its own tax regulations. Ex. B at 814

(Code of Ordinances of Tangipahoa Parish, Louisiana § 38-335).[13]

Again, because this is a motion to dismiss, and not a motion for summary judgment, merits

arguments are premature at this point. Plaintiffs offer these examples simply to show why this case

should proceed. *Wayfair* made clear that certain minimum standards must apply to a state's tax

regime to avoid imposing an intolerable burden on interstate commerce, and Louisiana fails to

satisfy those minimums.

**b.   *Pike*'s Balancing Test Favors Halstead's Commerce Clause Claims.**

The Parishes do not discuss the *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), balancing

test, focusing only on the *Wayfair* factors and relying on the arguments about the Remote Sellers

Commission.[14] But Halstead has alleged that Louisiana's rules fail under *both Wayfair* and, in

addition and in the alternative, under a *Pike* analysis. *See* VC ¶¶ 84-90. *Pike* asks whether a "burden

imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits"; if

---

[13] Plaintiff's counsel could not find Washington Parish's tax code online—its website only includes individual ordinances. *See, e.g.*, Washington Parish Council Ordinance No. 21-683: An Ordinance to Levy Taxes for 2021 Millage Rate Same as Prior Year—On Property Subject to Taxation       in       Washington       Parish       (May       10,       2021), http://www.washingtonparishalerts.org/files/135906854.pdf;                                              *cf.* http://www.washingtonparishalerts.org/Ordinances___Resolutions.html   (website   for   all ordinances/resolutions on per-action basis). Of course, tax administration is through the Washington Parish Sheriff's Office, but that website does not offer any further insight into the Parishes'       tax       code.       Washington       Parish       Sherriff's       Office,       Taxes, http://wpso.la.gov/page.php?id=18.

[14] In contrast, Secretary Richards does discuss *Pike*. Sec'y Memorandum at 6.

so, the Court will consider whether the local interest could be accomplished by more reasonable means. *Pike*, 397 U.S. at 142. If the state could better accomplish its goals by more reasonable means, then the burden on interstate commerce violates the Commerce Clause.

*Pike* involved the fundamental mismatch of a state regulation of packing materials for cantaloupes versus the very real costs of compliance by the growers. *Id*. at 139-40. A bumper crop caused the company to need to send the cantaloupes from the grove in Arizona to a packaging facility in California. Arizona law, however, required the produce to be "packed in containers in a manner and of a kind approved by the" state. *Id*. at 139. There were no such facilities available, so the company stood to lose $700,000 if it complied. *Id*. at 140.

In deciding the Dormant Commerce Clause issue, the Court articulated a test for burdens on interstate commerce: "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.* at 142. That is, assuming there is a local legitimate purpose, "then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Id.* Enhancing the reputation of Arizona cantaloupes was not weighty enough for the state to require the company to package the melons in-state at great cost. *See id.* at 146.

*Pike* applies to any regulation affecting interstate commerce, including tax rules. *See Wayfair*, 138 S. Ct. at 2099 (citing *Pike* balancing as an example of "an aspect[] of the Court's Commerce Clause doctrine [that] can protect against any undue burden on interstate commerce, taking into consideration the small business, startups, or others who engage in commerce across

state lines"). Under *Pike*, the initial question is whether the Louisiana tax regime "is both facially neutral and treats interstate and intrastate interests equally." *Pelican Chapter, Assoc. Builders & Contractors, Inc. v. Edwards*, 128 F.3d 910, 918 (5th Cir. 1997). If it does, then the next question is whether "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 503 (5th Cir. 2001).

Here, the costs Halstead would incur to comply with Louisiana's parish-by-parish reporting, filing, and collection requirements would be far greater than the combined tax revenue Louisiana local governments would receive from Halstead's sales. *See* VC ¶ 90. The exact amounts will be born out in discovery, but Halstead estimates the costs of compliance at $11,000 over three years. *See id*. ¶ 45.

Once more, argument over the merits is premature at this point, but this is sufficient to show that Halstead has stated "a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678, which is all it must show for its claim to survive a motion to dismiss.

### c.   Halstead Brings A Meritorious Due Process Clause Claim.

The Due Process Clause constrains a state's power to impose tax-related requirements on out-of-state entities. *See*, *e.g.*, *N.C. Dep't of Revenue v. The Kimberley Rice Kaestner 1992 Fam. Tr.*, 139 S. Ct. 2213, 2219 (2019). A challenge to a state tax scheme's impact on out-of-state businesses can sound under both the Dormant Commerce and Due Process Clauses. While the inquiries often look similar, they are distinct. *See Comptroller of Treas. of Md. v. Wynne*, 575 U.S. 542, 557 (2015) (collecting and comparing cases). But the differences are not always clear. *Wayfair*'s partial overturning of *Quill*'s use of minimum contacts as a *de facto* test for due process leaves this Court to discern what due process protections apply when a state imposes a

26

prohibitively complex regulatory framework on small out-of-state businesses.[15]

The Parishes argue that because Halstead has not crossed the *de minimis* threshold, the due process claim is "hypothetical," Parishes Mem. at 35-36, forgetting that it is the very pain of crossing the threshold that injures Halstead. Again, Halstead is not arguing about whether sales and use taxes can be assessed: instead, it is challenging the unnecessarily complex and difficult way to register and report the taxes due. *See* VC ¶¶ 66, 72. Halstead is deprived of liberty and property by the arbitrary burdens Louisiana imposes as a condition of selling into the state. The question is whether the state can impose a burden so heavy as to keep interstate sales by a small out-of-state seller to a minimum. The Due Process claim limits itself to the question of "whether the tax is 'rationally related' to 'values connected with the taxing State.'" VC ¶ 96. Defendants violate Due Process, not by imposing taxes *per se*, but by imposing the regulatory burden of having to discern dozens of local tax definitions, exemptions, and rates—the latter based on non-obvious criteria such as whether an address is in "Fire District #1" or a local economic improvement district.

For decades *Quill Corp. v. North Dakota By & Through Heitkamp*, 504 U.S. 298 (1992), and *National Bellas Hess, Inc. v. Dep't of Revenue of Ill.,* 386 U.S. 753 (1967), stood for the proposition that, absent physical minimum contacts, a mail-order business was not subject to sales and use tax collection in a state. But after the rise of eCommerce the Supreme Court reversed course in *Wayfair*, 138 S. Ct. at 2099. But in overruling *Quill* and *National Bellas Hess*, the Court

---

[15] There is substantial disagreement between the Parish Defendants and the Defendant State Secretary of Revenue over whether Halstead Bead's activity qualifies as "minimum contacts" under the Due Process Clause. *Compare* Parishes' Memorandum at 36 ("As of this filing, Plaintiff admittedly does not have minimum contacts with Louisiana.") *with* Sec'y. Memorandum at 8 ("[I]t is clear that minimum contacts are met."). That even the *defendants* cannot agree on the application of facts to law in this case shows that there is an active controversy for this Court to resolve and dismissal is inappropriate.

left an open whether a sufficiently convoluted tax system could impair a company's due process rights.

The answer is yes. Under the Due Process Clause, courts look to the "practical operation" of a tax measure on out-of-state businesses. *Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 444 (1940). That is, the "reasonable effect" on the taxes is what determines their constitutionality: "A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax" the law is proportional to the benefits the state gives to those conducting business. *Id.* The practical effect, as alleged by Halstead and assumed to be true here, is that the paperwork burden is so great that it vastly outweighs any benefit the state confers in having citizens who buy crafting supplies. That is, the due process harm is in the weight of Louisiana's parish-focused tax reporting system.

Under *Kaestner*, the court considers whether there are (1) minimum contacts between the state and the person being taxed and (2) whether the tax is "rationally related" to "values connected with the taxing State." *Kaestner*, 139 S. Ct. at 2220.

Louisiana's scheme fails the second criterion. For a state to reach beyond its borders, there must be a reasonable relationship between the tax system and *value* gained in the process. *See, e.g.*, *Norfolk & W. Ry. Co. v. Mo. State Tax Comm'n*, 390 U.S. 317, 325-29 (1968) (concluding that a state's formula for taxing railroad rolling stock was not in line with the benefits to the state). *Norfolk* shows that a purportedly neutral formula can nonetheless be irrational in its application to out-of-state businesses. In that case, Missouri "arrived at the assessment of rolling stock by first determining the value of all rolling stock, regardless of where located, owned or leased by the" railroad as of the state's tax assessment day. *Id.* at 321. And while there was "no suggestion" that Missouri "failed to follow the literal command of the statute," the problem was "that, in

mechanically applying the statutory formula, the Commission [had] arrived at an unconscionable and unconstitutional result." *Id*. The state could not use "the shelter of an imprecise allocation formula or by ignoring the peculiarities of a given enterprise, to project the taxing power of the state plainly beyond its borders." *Id*. at 325. And once a "taxpayer comes forward with strong evidence tending to prove" a constitutional violation, then "the State is obliged to counter that evidence or to make the accommodations necessary to assure that its taxing power is confined to its constitutional limits." *Id*. at 329.

Halstead asserts that Louisiana's interest in the taxable value of its sales is not worth the substantial compliance costs the state and parishes place on companies. *See* VC ¶ 71. Even in the internet age, with the aid of software, a business selling into Louisiana must spend enormous amounts of time not only registering and remitting in each parish, but also determining which school district, road district, or fire district rate might apply—too much to ask of someone provided only with a shipping address and a ZIP code. *See* VC ¶ 101. This is compounded by the fragmented and disparate regulations, product definitions, and rates applied by each parish. *See id*. The costs of compliance far outweigh and are not rationally related to the revenue the state receives, or the benefits Halstead receives for the opportunity to reach Louisiana retail buyers. *See id*. ¶ 102. Worse, Halstead's transactions are overwhelmingly wholesale, meaning there often is *zero* revenue at issue, but the company must still spend hours on parish paperwork. *See id*. ¶103.

With these allegations, Halstead has stated a claim under the Due Process Clause.

### d.  The Remote Sellers Commission Does Not Alleviate the Regulatory Burdens.

Defendants make much of the Remote Sellers Commission, which they say mitigates or eliminates the burdens Halstead seeks to avoid. *See* Parishes' Mem. at 8-11; *id*. at 33-35. That is a question of fact, to be determined after discovery, and it is therefore not proper for this Court to address the question at this point.

Even if it were, however, the Commission does not alleviate those burdens at all. The Remote Sellers website is a web portal where Halstead would input data already required in the paper forms—one at a time, parish-by-parish. Unlike South Dakota's free website approved in *Wayfair* or similar systems used elsewhere, the Remote Sellers website does *not* provide information on taxes owed for any given transaction. Instead, Louisiana directs businesses to a third-party commercial website to look up tax information. Nor does Louisiana provide guidance on local tax law—and each parish can have its own definitions, exemptions, deductions and other nuances that change tax liability. The Remote Sellers website provides *none* of this key information. Sellers, then, need to contact each parish for help, and the same issues about which parish to call still apply.

The burdens Halstead alleges therefore remain. Discovery will allow the parties to address these questions in full at the appropriate time. For now, this is sufficient to show that Halstead has stated a cause of action.

## III.     The Parishes' Remaining Arguments Are Unavailing.

Contrary to Defendants' intimations, *see* Parishes' Memorandum 37-41, there is nothing untoward about the 1983 claim for injunctive relief against the Defendants in their official capacities or the claim for attorney fees. Nor does qualified immunity apply when declaratory and injunctive relief are sought.

The Supreme Court made clear in *Dennis v. Higgins*, 498 U.S. 439, 441, 451 (1991), that Section 1983 claims for "declaratory and injunctive relief, refunds of all retaliatory taxes and fees paid, and attorney's fees and costs" are entirely appropriate in the context of Commerce Clause challenges to state taxation. Further, it is proper to name the tax collectors in their official

capacities along with the governmental entities that employ them.[16] Such actions have had Supreme Court imprimatur for well over 100 years under *Ex parte Young*, 209 U.S. 123 (1908). As state actors enforcing an unconstitutional law, these tax collectors have been "stripped of [their] official clothing" and become "private person[s] subject to suit." *Haverkamp v. Linthicum*, 6 F.4th 662, 669 (5th Cir. 2021).

The Parish Defendants all have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *City of Austin v. Paxton*, 943 F.3d 993, 999 (5th Cir. 2019) (citation and marks omitted). Suits that name entities as well as officials in their official capacity are also entirely proper. *See, e.g.*, *Boudreaux v. La. State Bar Ass'n*, 433 F. Supp.3d 942, 970-71 (E.D. La. 2020) (holding that suit was appropriate in naming both entity and public officials in their official capacities), *rev'd on other grounds*, 3 F.4th 748 (5th Cir. 2021). Defendants' argument that the tax collectors have qualified immunity to civil liability misses the larger point: immunity to civil damages does not immunize public officials from an injunction or from a claim for attorney fees. To determine whether a party may be sued under *Ex parte Young*, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of

---

[16] The Parish Defendants state that the Parishes of Lafourche, Washington, and Tangipahoa have not been served. Parishes' Memorandum at 37. Plaintiffs served the tax collectors of the three Parishes in their official capacities and at their Parish offices, achieving the objective of affecting proper notice to their respective political subdivisions. Rule of Civil Procedure 4(j)(2) states that a "state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Louisiana Code of Civil Procedure Article 1265 allows for service on a "political subdivision" by "personal service upon the chief executive officer thereof, or in his absence upon any employee thereof of suitable age and discretion." This Court has previously held that service upon an employee of a political subdivision satisfied the requirements for adequately serving the entity under Article 1265 and therefore Federal Rule of Civil Procedure 4(j)(2). *See, e.g.*, *Marshall v. Louisiana*, No. 15-1128, 2015 WL 5599037 (E.D. La. Sep. 22, 2015) (unreported). However, in light of Defendant's statement, Plaintiffs additionally completed service of process to the district attorneys of the three Parishes on February 10-11, 2022. (Dkt. Nos. 56, 57, and 58).

federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Paxton*, 943 F.3d at 998 (applying *Verizon*). Here, Halstead has properly brought official-capacity claims against the Parish Defendants because it "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective"—injunctive and declaratory relief.

Furthermore, attorney fees are appropriate in civil rights cases. Indeed, the Fifth Circuit has held that "absent special circumstances, a prevailing plaintiff should be awarded section 1988 fees as a matter of course." *Sanchez v. City of Austin*, 774 F.3d 873, 878 (5th Cir. 2014) (citation and marks omitted). No special circumstances exist here to bar the recovery of fees if plaintiffs prevail.

## CONCLUSION

For the foregoing reasons, the Court should deny the Parishes' Joint Motion to Dismiss.

Respectfully submitted,

s/ Joseph Henchman

Sarah Harbison (LSBA 31948)
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone: (504) 952-8016
sarah@pelicaninstitute.org

Jacob Huebert*
GOLDWATER INSTITUTE
500 E. Coronado Road
Phoenix, AZ 85004
Telephone: (602) 462-5000
litigation@goldwaterinstitute.org

Dated: February 15, 2022

Joseph Henchman*
Tyler Martinez*
NATIONAL TAXPAYERS UNION FOUNDATION
122 C Street NW, Suite 650
Washington, DC 20001
Telephone: (703) 683-5700
jbh@ntu.org
tmartinez@ntu.org

*Counsel for Plaintiff*
* Admitted *pro hac vice*