## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HALSTEAD BEAD, INC., an Arizona corporation, | Civil Action No. 2:21-cv-02106-JTM-KWR |
| *Plaintiff*, | |
| *v.* | **OPPOSITION TO LAFOURCHE PARISH'S MOTION TO DISMISS** |
| KEVIN RICHARD, in his official capacity as Louisiana Secretary of Revenue, *et al.* | |
| *Defendants*. | |

The Court should deny Lafourche Parish's Motion to Dismiss (Dkt. No. 84) ("Lafourche's Motion"). In its Memorandum in Support (Dkt. No. 84-3) ("Lafourche Memorandum"), the Parish repeats the same arguments in the Joint Motion to Dismiss (Dkt. 39), which has already been fully briefed and argued. Lafourche's Motion therefore fails for the same reasons as the Parishes' Joint Motion and the State's Motion. Halstead Bead, Inc. ("Halstead Bead") has been injured by Louisiana's parish-by-parish sales tax system and therefore has standing to challenge it, and, contrary to Defendants' Rule 12(b)(6) arguments, Plaintiff has pleaded viable constitutional claims against Lafourche Parish.

## STATEMENT OF THE CASE

To minimize redundancy, Halstead Bead incorporates by reference the Statement of the Case in its Opposition to Defendant Parishes' Joint Motion to Dismiss at 1-5 (Feb. 15, 2022) (Dkt. No. 61). As is relevant for this new Motion to Dismiss, Lafourche Parish sought more time to answer (Dkt. No. 71) and Halstead Bead responded that Lafourche Parish was already properly served and noted the pending oral argument. (Dkt. No. 73.) This Court granted more time for

Lafourche Parish to respond. (Dkt. No. 75.) On March 17, 2022, this Court heard oral arguments on the Joint Motion to Dismiss and Secretary Richard's Motion to Dismiss. (Dkt. No. 82).

## LEGAL STANDARDS

Dismissal under Rule 12(b)(1) of a claim invoking federal question jurisdiction "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief," *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), and only if the complaint "is not colorable'" or is "wholly insubstantial and frivolous." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006) (citation omitted).

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and dismissal is improper "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation and quotation marks omitted). In reviewing the complaint, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Edionwe v. Bailey*, 860 F.3d 287, 291, 295 (5th Cir. 2017) (citation and quotation marks omitted).

## ARGUMENT

Rather than bring new arguments to this Court, Lafourche Parish simply repeats the arguments already made by the parishes jointly and by the Secretary of Revenue.[1] Therefore, this

---

[1] Lafourche Parish even filed duplicative exhibits from the Parishes' Joint Motion to Dismiss as well: the Affidavit of Amanda Granier (Dkt. Nos. 43-4 and 84-1) and the Memorandum of Understanding from the Remote Sellers Commission (Dkt. Nos. 43-4 and 84-2). Indeed, the Lafourche Parish exhibits bear this Court's stamping for both filings. *See* Dkt. Nos. 84-1 and 84-2. In any event, in deciding this motion, the Court should "rely on the verified complaint for an account of the facts" because that is what the Court is testing. *Barry v. Freshour*, 905 F.3d 912, 913 n.1 (5th Cir. 2018).

new Motion fails for the same reasons as the Joint Motion. *See* Opp. to Def. Parishes' Joint Mot.

to Dismiss (Dkt. No. 61).

I.      **Lafourche Parish was Properly Served and had Actual Notice of Halstead Bead's Claims against it.**

Lafourche waived service of process, in writing. Lafourche Memorandum at 5 ("Lafourche

Parish hereby formally waives service of process"). That ends the analysis: Lafourche is now

properly involved in this case.

Yet the Parish spends an entire page complaining about the method of both services of

process. *Id.* at 5-6. This is immaterial. Suits that name entities as well as officials in their official

capacity are entirely proper and routine. *See*, *e.g.*, *Boudreaux v. La. State Bar Ass'n*, 433 F.

Supp.3d 942, 970-71 (E.D. La. 2020) (holding that suit was appropriate in naming both entity and

public officials in their official capacities), *rev'd on other grounds*, 3 F.4th 748 (5th Cir. 2021).

Under Federal Rule of Civil Procedure 4(j)(2)(B), delivery of service upon any employee

of the Parish is sufficient because that is sufficient under state law. Article 1265 of the Louisiana

Code of Civil Procedure allows service on a "political subdivision" by "personal service upon the

chief executive officer thereof, or in his absence upon any employee thereof of suitable age and

discretion." Another Louisiana statute provides that "[i]n all suits filed against a political

subdivision of the state" the Secretary of State can be the registered agent if the parish pays a $10

annual fee, La. Rev. Stat. § 13:5107(B), but none of the Defendants here did so.[2] Therefore,

"service may be obtained on the district attorney, parish attorney, city attorney, or any other proper

officer or person." *Id.* Following the lead of § 13:5107(B), Halstead Bead served a second copy of

the complaint on the Parish attorneys.

---

[2] This is not unlike the registered agent requirement that corporations (with minimum contacts) must register with the Secretary of State. La. Rev. Stat. § 12:1-501.

3

This Court has held that service upon an employee of a political subdivision satisfies the requirements of Article 1265 and therefore satisfies Rule 4(j)(2). *See*, *e.g.*, *Marshall v. Louisiana*, No. CIV.A. 15-1128, 2015 WL 5599037 at *3 (E.D. La. Sep. 22, 2015) (unreported). Lafourche Parish has had two employees served—including a high-ranking attorney for the Parish. And the second summons was still timely. *See* Fed. R. Civ. P. 4(m) (ninety-day clock); V. Compl. (Dkt. No. 2) (filed Nov. 15, 2021); Summons Returned Executed at 2 (Dkt. No. 66) (Summons executed on Feb. 10, 2022).

The issue really lies in attaching the appropriate government officer and applying *Ex Parte Young*, 209 U.S. 123, 159-60 (1908), which was done here when Halstead Bead served Amanda Grainer, the Sales Tax Collector for Lafourche Parish. V. Compl. ¶ 7; Summons Returned Executed (Dkt. No. 24). Lafourche's Sales Tax Collector, not the Parish President, is the proper defendant under *Ex Parte Young*. *See Haverkamp v. Linthicum*, 6 F.4th 662, 670 (5th Cir. 2021) ("To be amenable to suit under the doctrine, the state actor must both possess the authority to enforce the challenged law and have a sufficient connection to the enforcement of the challenged act.") (quoting *Ex Parte Young*, 209 U.S. at 157) (cleaned up). The Parish President lacks sufficient connection to the enforcement of the sales tax reporting system to be the proper defendant.

Serving Ms. Grainier brings the relevant defendant, a government employee sued in her official capacity, before this Court. And her counsel has defended the relevant law in the same manner as Lafourche separately tried to. Lafourche's Motion to Dismiss incorporates by reference the already-pending Joint Motion to Dismiss. *See* Lafourche Memorandum at 2 ("As a preliminary matter, Lafourche Parish shares the positions presented by the tax collectors in their Joint Motion to Dismiss with accompanied Memorandum in Support.") The rest of the Parish's new Memorandum simply repeats the arguments already before this Court. Even the service of process arguments were already made. *Compare* Lafourche Memorandum at 5-6 *with* Memorandum in Support of

Joint Motion to Dismiss at 37. And Halstead Bead has already countered them. *See* Opp. to Def. Parishes' Joint Mot. to Dismiss at 31 n.16.

Lafourche suffered no prejudice in serving both the relevant *Ex Parte Young* defendant and the Parish attorney, and this counsels against dismissal. *Alden v. Allied Adult & Child Clinic, L.L.C.*, No. CIV.A. 01-371, 2002 WL 1684553, at *1 (E.D. La. July 22, 2002) (unreported). There has been no discovery or trial, and the Parish had actual notice of Halstead Bead's challenge.

In any event, if this Court finds that service was improper, an order directing service to happen within a specified time would be the correct remedial action (or, in the extreme, dismissal *without* prejudice). *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996).

## II.    Halstead Bead has Standing and this Case is Properly Before This Court.

In response to the Parish's standing arguments, Halstead Bead incorporates by reference its discussion of standing in its Opposition to Parishes' Joint Motion to Dismiss.

As discussed at length in oral argument, the compliance burden is so high that Halstead Bead must closely monitor its sales so it does not cross the *de minimis* threshold. Halstead Bead did not file this case until the harm was imminent—that is, when its sales were getting close to the threshold. Even while awaiting the Defendants' answers, Halstead Bead did in fact have to stop its sales in order to avoid incurring those compliance costs. Supp. Decl. of Robert ("Brad") Scott ¶¶ 5-6 (Dkt. No. 61-1). It lost out on sales from December 6 onwards. Thus, Halstead Bead has experienced twofold harm: (1) the monitoring of its sales at all times to be under the threshold, and (2) the loss of sales once it approached that threshold. Halstead's only alternative to ceasing sales would be to flout the law, which is unconscionable for a company as careful with compliance as Halstead Bead. This is more than sufficient to show injury-in-fact under relevant Supreme Court and Fifth Circuit precedent. *See*, *e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 462 (1974) (plaintiff who is placed "between the Scylla of intentionally flouting state law and the Charybdis of forgoing

what he believes to be constitutionally protected activity" has standing); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (applying *Steffel*); *Contender Farms, LLP v. US Dept. of Agriculture*, 779 F.3d 258, 267-68 (5th Cir. 2015) (applying *Susan B. Anthony List* to regulatory oversight of a business).[3]

Under discussion of mootness and ripeness, Lafourche Parish confuses merits with standing. Lafourche Memorandum at 11-15. Mootness occurs when there are no longer adverse parties with sufficient legal interests to maintain the litigation, such that the Court is incapable of granting relief. *Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999). Halstead Bead's harms occur every year, however. Supp. Decl. at ¶ 8. The threat of enforcement if Halstead Bead violates the challenged laws is "sufficient to thwart any assertion that the dispute lacks ripeness." *Cooper v. McBeath*, 11 F.3d 547, 552 n.7 (5th Cir. 1994). And, of course, the Court can remedy Halstead Bead's injury by the injunctive relief prayed for.

Thus, Lafourche Parish's arguments fail for the reasons already briefed and argued.

### III.   Halstead Bead Stated Proper Constitutional Claims Against Lafourche Parish.

#### a.   The Burdens of The Commission's Website are Questions of Fact for Development in Discovery and Trial, Not for Resolution Under Rule 12(b)(6).

Like the other Parish Defendants, Lafourche says the Louisiana Sales and Use Tax Commission for Remote Sellers ("Commission") website resolves Halstead Bead's injury. *Compare*, *e.g.*, Memorandum in Supp. of Joint Motion to Dismiss at 33-35 *with* Lafourche Memorandum at 18-19.

---

[3] Lafourche Parish's reliance on *Coury v. Prot*, 85 F.3d 244, 247 (5th Cir. 1996), is inapplicable, as it examined the limits of diversity jurisdiction applied when a citizen moves from one state to a foreign country. That case has no bearing on Article III standing in a federal question case like this.

Halstead Bead maintains that questions about the burdens or benefits of Louisiana's tax reporting operations are merits questions, and thus not appropriate for resolution at this time, since this proceeding involves a Rule 12(b)(6) motions to dismiss. Opp. to Def. Parishes' Joint Mot. to Dismiss at 29-30. At this stage of the proceeding, the Court must assume factual allegations in the Complaint are true. *Frank v. Delta Airlines Inc.*, 314 F.3d 195, 197 (5th Cir. 2002).

At the oral argument on March 17, 2022, the Court asked Plaintiff's counsel about the practical operation of the Commission website, and later sought login credentials for the website from Defendants. Order (Dkt. No. 83).[4] Independent judicial investigation of the facts is not proper at this stage. *See*, *e.g.*, *United States v. Lewis*, 833 F.2d 1380, 1385–86 (9th Cir. 1987); *see also Castro v. United States*, 540 U.S. 375, 386 (Scalia, J., concurring) ("Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.").

One exception to this rule is judicial notice, but the Commission's website is beyond the scope of judicial notice in this Circuit. *See* Fed. R. of Evid. 201(b); *cf. Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 583-84 (5th Cir. 2022) (rejecting use of the Wayback Machine Internet Archive as not self-authenticating to satisfy Rule 201). The core of this case—at least how Defendants frame it—is how the website works (or does not work) and an *in camera* investigation lacks the procedural safeguards of full, in-public testimony and evidence. *See*, *e.g.*, *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)."). Halstead Bead should have the opportunity to

---

[4] As of this filing, there is no docket entry on whether Defendants provided those credentials.

develop its evidence—which means this Court should not dismiss the case, especially based on an *in camera* investigation.

Defendants assert that questions about the burdens of Louisiana's tax reporting operations are appropriate at this stage, even though they are merits questions. All that matters at this stage is the well-pled Verified Complaint. *See Edionwe*, 860 F.3d at 291. Plaintiffs object to any effort to convert this Rule 12(b)(6) motion into a summary judgment proceeding.

If this Court is inclined to investigate the opacity and unworkableness of Louisiana's system, however, Plaintiffs—without waiving the foregoing objection, and while insisting upon their right to introduce evidence in the proper manner and at the proper time—suggest the following as to why the Commission is not the panacea Defendants claim it is. Indeed, the website is essentially nothing more than a computerized version of the paperwork forms that Plaintiffs allege are already unconstitutionally burdensome.

When looking up rates for each parish on the website, a business is presented with the same information on the parish's paper forms without any aid for address look-up. *See* La. Sales and Use Tax Commission for Remote Sellers.[5] First, Lafourche Parish:

---

[5] https://remotesellersfiling.la.gov/lookup/Lookup.aspx.



Next, Tangiaphoa Parish:



Finally, Washington Parish:



The website is simply a repackaged version of the paper forms in Verified Complaint Exhibits C (Dkt. No. 2-4) (Lafourche), D (Dkt. No. 2-5) (Tangipahoa) and E (Dkt. No. 2-6) (Washington). Note further that the Commission's website *cannot give a uniform answer* on definition and exemptions and other technical data that is necessary for filling out a correct and complete sales and use tax return. Indeed, each Parish rate look-up page has the same disclaimer:

> Remittance rates displayed have been provided by the tax authority. The 3rd party collectors are not responsible for rate discrepancies at any time. If you have any question(s) about the rates displayed, please contact the tax authority directly for confirmation.

See below:



This means that this information *may not be up-to-date* and therefore cannot be relied upon—and Halstead Bead's good faith reliance upon this information cannot shield it from liability. With respect to those matters, the website simply instructs users to contact the local official. Yet no contact information is provided, whether for the parishes or for any place to get answers on rates or technical tax questions, other than a general email box.

Of course, this not at all applying the *Wayfair* factors that recognized, *inter alia*, the importance of providing immunity for good faith retailers relying upon the state's website information on rate look ups for addresses. *See South Dakota v. Wayfair*, 138 S. Ct. 2080, 2099-2100 (2018).

The Commission's website also recognizes that rates change even *within* a parish, and that each parish can set its own exclusions, exemptions, and deductions. As the FAQ page attests: "Louisiana's sales tax system is unique in that state and local governments each collect their own sales tax and provide for their own exclusions, exemptions, and deductions." La. Remote Sellers Comm'n, FAQ No. 17 "What does 'state and local sales and use tax based upon actual applicable bases and rates' mean?" [6]

---

[6] https://remotesellers.louisiana.gov/FAQ.



The Remote Sellers Commission's website provides a list of at least some exemption codes that

generates as a spreadsheet:



This spreadsheet is located in the Commission's "Documents" tab.[7]. But the codes lack context or further explanation and are tied to addresses put into by the business.

What is more, in trying to solve the address/rate problem, the Commission's website disclaimer points the user to use the Sales Tax Explorer tool for rate look up by address:



Sales Tax explorer requires its own login[8]:



[7] https://remotesellers.louisiana.gov/Documents/Reduced%20Rate%20Codes%20Table%20
WEBSITE%202020_11_13.xlsx.
[8] https://app.salestaxexplorer.com/#/login.

That is because Sales Tax Explorer is not free—it costs money, in various tiers[9]:



The mismatch between the expected sales tax revenue and the burden placed on Halstead Bead depends on the pricing tier. During the oral argument, Halstead Bead's counsel focused on the Platinum level, as the best per-transaction value option, but Halstead Bead's sales last year may allow it to use a lower tier (such as Bronze)—yet still at a multiple of what the state or parishes would get in actual tax remittance from retail sales.

The Commission's other resources are similarly unhelpful. From its "Links" page, the Commission's website also points to the Louisiana Association of Tax Administrators, an independent entity that offers a look up tool that purports to be free, but requires the business to provide information to get an account.

---

[9] https://app.salestaxexplorer.com/#/pricing.



But that page is from a third-party private association, not an official government website, and it

has a disclaimer that takes it out of *Wayfair*'s application:

> **Disclaimer**: Information presented on this website is collected, maintained, and provided as guidelines and informational purposes only. All documents are provided without any warranty as to their legal effect and completeness. LATA shall under no circumstances be liable for any actions taken or omissions made from reliance on any information contained herein from whatever source or any other consequences from any such reliance.

La. Assoc. of Tax Administrators.[10] The LATA website also provides other information, such as

a list of what cities are located in each parish[11]:

---

[10] https://lataonline.org/ (bottom of the page).
[11] https://lataonline.org/for-taxpayers/city-to-parish-index/.



But city limits are not always synonymous with postal address (*i.e.,* the address' city may be simply the nearest place with a post office). Some individual jurisdictions have separate sales tax lookup tools. *See, e.g.*, City of Baton Rouge and Parish of East Baton Rouge, Sales Tax Domicile Lookup.[12] But this is not universal practice and none of the Defendant Parishes do this.

   None of these resources tell a business how to figure out the complex and conflicting application of local sales tax rules in the state. None of them tell a business what rate applies to a specific address (without paying another third-party company for the privilege). None of them can be relied upon in an audit or enforcement action. Thus, the website—even accepting Defendants' contention that it is still "under construction" four years after *Wayfair*—does not and cannot cure the injuries Halstead Bead endures under Louisiana's parish-by-parish system.

   To reiterate: these facts are offered to the Court solely in response to the assertions made at oral argument and by the Defendant. Fact-finding is not proper at this stage, and full

---

[12] https://city.brla.gov/gis/salestaxlookup.asp.

development of the precise burden Halstead Bead suffers should be left for discovery, testimony, proper motions for judicial notice, etc., all of which come after this Court decides the motions to dismiss.

### b. It is the Registration and Reporting System to Pay Lafourche's Sale and Use Taxes and the Parish Retains Enforcement and Audit Authority.

Lafourche Parish complains that Halstead Bead has no claim against the parish government. Lafourche Memorandum at 15. This is incorrect.

Louisiana Constitution Article VII, Section 3(B)(1) and Louisiana Revised Statute § 47:337.14 mandate sales and use tax registration and reporting system based on the sixty-four parishes (though only sixty-three collect sales and use taxes, Cameron Parish does not). Under Louisiana law, each taxing jurisdiction may create its own definitions for tax purposes, meaning that there are no uniform rules throughout the state.

Lafourche Parish exercises this authority, as it admits. Lafourche Memorandum at 17 ("Lafourche Parish has an independent system in accordance with Louisiana law as established by the legislature."). It has its own sales and use tax regulations. Ex. B at 330 (showing Code of Ordinances of Lafourche Parish, Louisiana §§ 38-260 *et seq*.). It has its own tax definitions. *Id*. at 343 (Code of Ordinances of Lafourche Parish, Louisiana § 38-331). It has independent auditing powers and tax penalties. *Id*. at 347 (Code of Ordinances of Lafourche Parish, Louisiana § 38-335); 349 (Code of Ordinances of Lafourche Parish, Louisiana § 38-337). It has its own enforcement provisions. *Id*. at 356 (Code of Ordinances of Lafourche Parish, Louisiana § 38-340(g)).

But none of that is *mandated* by state law. Lafourche Parish could choose—as Cameron Parish has done—to not collect sales tax at all. More practically, it could choose to not require eCommerce sellers to register individually with Lafourche Parish. The Parish could also decline

to have independent tax definitions and regulations, and have a flat rate for the Parish, thereby avoiding the Dormant Commerce Clause and Due Process issues under the federal Constitution.[13] Lafourche Parish chose to go its own way instead—a way that burdens interstate commerce and robs Halstead Bead of its due process rights.

Additionally, Ms. Granier, as Sales Tax Collector, is named as a defendant under *Ex Parte Young*, but she only enforces the rates, definitions, and regulations created by the Parish and other Parish entities (the school board, etc.). She cannot set the rates or the definitions for sales and use tax, nor wholesale exempt out-of-state eCommerce businesses like Halstead Bead. Lafourche Parish, therefore, is a necessary and proper party to this litigation.

Parishes regularly bring tax enforcement actions. *See*, *e.g.*, *Lerner New York, Inc. v. Normand*, 288 So. 3d 242, 246-47 (La. App. 5th Cir. 2019) (Jefferson Parish's collection action against a New York clothier). And the Parish's Tax Collector and Parish Entities are often co-litigants in these actions. *See*, *e.g.*, *R & B Falcon Drilling USA, Inc. v. Lafourche Par. Sch. Bd. ex rel. Percle*, 950 So. 2d 696, 698 (La. App. 1st Cir. 2006). The parishes have also argued in state court that Louisiana Constitution Article VII, Section 3 can stop legislative attempts to standardize sales and use tax collection systems. *W. Feliciana Par. Gov't v. State*, 286 So. 3d 987, 994 (La. 2019).

Therefore, it is clear that the parishes are interested in protecting the current system of registration and reporting. Lafourche Parish is a proper party to this challenge due to its unique

---

[13] It is significant that if Halstead Bead were to get all that it asks for here—a declaration that Louisiana Constitution Article VII, Section 3(B)(1) and Louisiana Revised Statute § 47:337.14 violate the federal Constitution, and an injunction to prevent their use—then Louisiana's state tax structure would simply revert back to the way it was in 2017, before *Wayfair*. The state and parishes could still tax those businesses with physical presence in the state. State and local budgets presumably survived before the ability to tax internet sales was recognized by the Supreme Court.

definitions, difficult-to-discern taxing districts, and other traps for out-of-state business. Halstead

Bead brings meritorious claims against the Parish and therefore dismissal is not appropriate.

## CONCLUSION

For the foregoing reasons, this Court should deny Lafourche Parish's Motion to Dismiss.

Respectfully submitted,

s/ Joseph Henchman
Joseph Henchman*
Tyler Martinez*
NATIONAL TAXPAYERS UNION FOUNDATION
122 C Street NW, Suite 650
Washington, DC 20001
Telephone: (703) 683-5700
jbh@ntu.org
tmartinez@ntu.org

Sarah Harbison (LSBA 31948)
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone: (504) 952-8016
sarah@pelicaninstitute.org

Timothy Sandefur*
GOLDWATER INSTITUTE
500 E. Coronado Road
Phoenix, AZ 85004
Telephone: (602) 462-5000
litigation@goldwaterinstitute.org

Dated: April 8, 2022

*Counsel for Plaintiff*
* Admitted *pro hac vice*

19

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing using the court's CM/ECF system. A Notice of Docket Activity will be emailed to all registered attorneys currently participating in this case, constituting service on those attorneys:

| | |
|---|---|
| Russell J. Stutes, Jr. | rusty@stuteslaw.com |
| Russell Stutes, III | rjs3@stuteslaw.com |
| Ross Forrest Lagarde | ross@rlagardelaw.com |
| Jeffrey G. Lagarde | jeff@rlagardelaw.com |
| Alexander L. Reed | alex@rlagardelaw.com |
| Drew M. Talbot | drew@ramlaw.net |
| Patrick Amedee | pamedee@amedeelaw.com |
| Catherine Chambers Masterson | cmasterson@amedeelaw.com |
| Joseph Zachary Landry | josephlandry@amedeelaw.com |
| Michael G. Gee | mgee@phjlaw.com |
| Mallory Fields Maddocks | mmaddocks@phjlaw.com |

/s Joseph Henchman

Dated April 8, 2022     Joseph Henchman